No. 2—10—0743
Opinion filed March 22, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| PACE COMMUNICATIONS SERVICES CORPORATION and TUNICA PHARMACY, INC., Individually and as the Representatives of a Class of Similarly Situated Persons, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs and Citation Petitioners-Appellees, | ) ) ) ) | |
| v. | ) ) | No. 04—L—1043 |
| EXPRESS PRODUCTS, INC., | ) ) | |
| Defendant | ) ) | |
| (Cumberland Mutual Fire Insurance Company, Citation Respondent-Appellant). | ) ) ) | Honorable David M. Hall, Judge, Presiding. |

JUSTICE BOWMAN delivered the judgment of the court, with opinion.
Justices Zenoff and Birkett concurred in the judgment and opinion.

**OPINION**

The circuit court of Lake County entered an agreed order between plaintiffs, Pace Communications Services Corporation and Tunica Pharmacy, Inc., and defendant, Express Products, Inc., providing for a monetary judgment against defendant that could be satisfied only through the collection of the proceeds of any applicable liability insurance policy. Plaintiffs then issued a citation to discover assets against citation respondent, Cumberland Mutual Fire Insurance Company (Cumberland), an insurer of defendant. Cumberland moved to dismiss the citation, arguing in part

that a nationwide coverage clause within the liability policy it issued to defendant was an insufficient basis for the court's exercise of personal jurisdiction over it. Cumberland also sought dismissal based on improper service. The trial court denied Cumberland's motion. We granted Cumberland's petition for leave to appeal under Supreme Court Rule 306(a)(3) (Ill. S. Ct. R. 306(a)(3) (eff. Sept. 1, 2006)), and we now affirm the trial court's judgment.

## I. BACKGROUND

Defendant is a Pennsylvania corporation with its principal place of business also located in Pennsylvania. Cumberland is a New Jersey corporation with offices in New Jersey, Pennsylvania, Maryland, and Ohio. Cumberland issues policies for fire loss and commercial general liability, insuring property and businesses in the states of New Jersey, Pennsylvania, Maryland, and Delaware. Cumberland issued defendant sequential annual liability policies covering the period from April 26, 2001, to April 26, 2003. The policies both contain the same material terms and provide a general aggregate limit of $2 million; a personal and advertising injury limit of $1 million; a per-occurrence limit of $1 million; and other limits not relevant here. The policies state that Cumberland "will have the right and duty to defend the insured against any 'suit' " seeking damages covered by the policies if the injury or offense took place in the " 'coverage territory,' " the definition of which includes the "United States of America."

Plaintiffs filed a class action complaint against defendant in December 2004 alleging that it violated provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 (2000)) by faxing unsolicited advertisements to persons and companies in Illinois and other states, without the recipients' consent. As amended, the complaint alleged improper faxes between the dates of February 2002 and October 2004. Defendant tendered its defense to Cumberland and another insurance

company. Cumberland initially took the position that it had no obligation to defend or indemnify defendant, but it later agreed to defend under a reservation of rights. Cumberland and the other insurance company filed actions in Pennsylvania seeking declarations that they had no obligation to defend or indemnify defendant.

On October 13, 2009, the Lake County circuit court entered an agreed order whereby judgment was entered in favor of plaintiffs, as representatives of a class of similarly situated persons, and against defendant for $7,999,999.96. The settlement provides that the judgment can be satisfied only from the proceeds of defendant's insurance policies.

Also on October 13, plaintiffs caused a citation to discover assets to be issued on Cumberland via the Illinois Department of Insurance.

On November 12, 2009, Cumberland filed a motion to dismiss the citation, pursuant to section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2008)). Cumberland argued that: (1) it was not a resident of Illinois and not subject to the personal jurisdiction of Illinois courts; (2) plaintiff did not properly serve it with the citation; and (3) there were prior-filed suits pending between the same parties for the same cause of action.

Plaintiffs filed an amended citation on May 26, 2010. On May 28, 2010, plaintiffs served the citation on the Department of Insurance and on Cumberland directly via certified mail.

On June 29, 2010, the trial court denied Cumberland's motion to dismiss. It found that Illinois courts had personal jurisdiction over Cumberland based on the nationwide-territory-of-coverage clause in the insurance policies. It also found that plaintiffs' service of process on Cumberland complied with the requirements of section 123 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/123 (West 2008)), and it further granted plaintiffs leave to file a third citation.

Last, the trial court found that the Pennsylvania lawsuits did not involve the same parties, because plaintiffs were not a part of those suits.

Plaintiffs filed a third citation on July 27, 2010, and served it directly on Cumberland on August 2, 2010.

On July 26, 2010, Cumberland sought leave to appeal the trial court's decision finding personal jurisdiction over it. We granted the petition on August 31, 2010.

## II. ANALYSIS

On appeal, Cumberland argues that the trial court erred in ruling that Cumberland was amenable to: (1) the personal jurisdiction of the Illinois courts; and (2) service under the Insurance Code.

### A. Personal Jurisdiction

We begin with the issue of personal jurisdiction. When seeking jurisdiction over a nonresident defendant, a plaintiff has the burden of establishing a *prima facie* case for jurisdiction. *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). The burden then shifts to the defendant to show that the assertion of jurisdiction is unreasonable. *Bell v. Don Prudhomme Racing, Inc.*, 405 Ill. App. 3d 223, 228 (2010). Where, as in this case, the trial court determined the issue of personal jurisdiction based solely on documentary evidence, we review its ruling *de novo*. *MacNeil*, 401 Ill. App. 3d at 1080.

Illinois's long-arm statute, section 2—209 of the Code (735 ILCS 5/2—209 (West 2008)), controls the authority of Illinois courts to exercise jurisdiction over nonresidents. *Bell*, 405 Ill. App. 3d at 228. Section 2—209(c) states that a court may exercise jurisdiction on any basis permissible under the Illinois Constitution and the United States Constitution. 735 ILCS 5/2—209(c) (West

2008). Accordingly, if the contacts between a defendant and Illinois satisfy both federal and Illinois due process requirements, an Illinois court may exercise jurisdiction, and we need not consider whether the defendant performed any of the acts enumerated in the long-arm statute. *Bell*, 405 Ill. App. 3d at 229.

To satisfy federal due process requirements, a nonresident defendant must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction is present under such circumstances because where a defendant has purposefully availed itself of the privilege of conducting activities within a state, it invokes the benefits and protections of the state's laws, and it is therefore not unreasonable to require the defendant to submit to litigation in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).

The requirements for personal jurisdiction differ depending on whether "general" jurisdiction or "specific" jurisdiction is sought. *Bell*, 405 Ill. App. 3d at 229. General jurisdiction arises when a state "exercises personal jurisdiction *** in a suit not arising out of or related to the defendant's contacts with the forum" (*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984)), and it results from a defendant's continuous and systematic business contacts with the forum (*Bell*, 405 Ill. App. 3d at 230). In this case, the trial court found personal jurisdiction over Cumberland based on specific jurisdiction rather than general jurisdiction. Specific jurisdiction arises where the defendant has purposefully directed its activities at the forum's residents and the litigation is based on alleged injuries arising out of or relating to the defendant's activities. *Burger King Corp.*, 471 U.S. at 472. For an Illinois court to have specific jurisdiction over a nonresident defendant, the

following criteria must be met: (1) the defendant had minimum contacts with Illinois such that it was fairly warned that it may be haled into an Illinois court; (2) the action arose out of or was related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois. *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 954 (2010).

In finding specific jurisdiction over Cumberland, the trial court relied primarily on *Bevins v. Comet Casualty Co.*, 71 Ill. App. 3d 758 (1979), and *Rossman v. State Farm Mutual Automobile Insurance Co.*, 832 F.2d 282, 286-87 (4th Cir. 1987). *Bevins* is the only Illinois case that the parties have cited, and that our research has revealed, touching upon the effect on personal jurisdiction of an insurance policy's nationwide-territory-of-coverage clause. In *Bevins*, the plaintiffs and a man named Edward Chrisman were involved in a car accident in West Virginia that resulted in injuries to the plaintiffs. Chrisman had automobile insurance through the defendant, Comet Casualty Company (Comet), which was an Illinois corporation. *Bevins,* 71 Ill. App. 3d at 759-61. Comet was not licensed to do business in West Virginia and had never solicited insurance applications or issued insurance contracts to West Virginia residents. *Id.* at 763. The plaintiffs obtained judgments against Chrisman and Comet in the West Virginia courts. *Id.* at 761-62. Comet did not pay the judgment amounts, so the plaintiffs filed a petition to register the judgments in Illinois. *Id.* at 759, 762. Comet argued, among other things, that the West Virginia courts lacked personal jurisdiction over it, rendering the judgments void. *Id.* at 759.

In deciding whether the West Virginia courts had jurisdiction over Comet, the Illinois Appellate Court looked to West Virginia's statutory criteria for obtaining jurisdiction over an insurance company not registered in that state. *Id.* at 763-64. The statute allowed jurisdiction for,

*inter alia*, "any other transaction of business" in the state. (Internal quotation marks omitted.) *Id.* at 764. The *Bevins* court stated:

> "The facts above set forth show that [Comet] agreed to insure Chrisman against all liability regarding personal injury and property damage as a result of the use of the automobile in any State without limitation. The reasonable expectation raised from this policy is that [Comet] would provide coverage wherever the insured would be located and in any State in which the automobile was used." *Id.*

The court stated that the facts also showed that Comet performed a number of acts in West Virginia, such as writing letters to parties in that state and seeking information concerning the occurrence and injuries. The court concluded that Comet was doing business by these acts, allowing the West Virginia courts to acquire jurisdiction over it. *Id.*

Cumberland argues that *Bevins* lacks precedential value here because the court did not interpret Illinois's long-arm statute and did not find the existence of specific jurisdiction based solely on a nationwide-territory-of-coverage clause. However, the *Bevins* court stated that both the Illinois long-arm statute and the applicable West Virginia statute exhibited a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause. *Bevins*, 71 Ill. App. 3d at 763. Further, while Comet's actions in sending letters to West Virginia and seeking information about the accident and injuries were cited by the court in determining that West Virginia had personal jurisdiction over Comet, it also relied on Comet's nationwide-territory-of-coverage clause. Thus, while the *Bevins* court's analysis is not dispositive here, neither is it completely irrelevant.

We now examine *Rossman*. There, a father and son who were Illinois residents owned a car. The father paid insurance premiums in Illinois to Consolidated Insurance Company. The son later moved to Virginia and took the car with him, and he was involved in a car accident there. The plaintiffs suffered injuries and obtained judgments in Virginia against the son. *Rossman*, 832 F.2d at 284-85. They then sought a declaratory judgment against Consolidated for coverage. The federal district court found that it had personal jurisdiction over Consolidated, a ruling that the insurer challenged on appeal. The Fourth District Court of Appeals affirmed. *Id.* at 285-86. The court stated that Virginia's long-arm statute allowed jurisdiction to the extent permitted by due process, so the statutory and due process analyses were identical. *Id.* at 286 n.1. It concluded that Consolidated's nationwide-coverage clause created the minimum contacts necessary for personal jurisdiction. The court stated that because Consolidated "specifically promised to defend its policyholders from any claim or suit arising from a loss or accident within its policy territory, which included the entire United States," its "expectation of being haled into court in a foreign state is an express feature of its policy." *Id* at. 286. The court continued:

"Presumably, Consolidated offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to Consolidated are neither fortuitous nor incidental. [Citation.] This type of clause, assuring policyholders that they will be covered under a broad range of circumstances in a broad range of forums, is basic to the product that Consolidated markets. If Consolidated wished to avoid suit in Virginia or any other forum, it could have excluded that state from the 'policy territory' defined in the policy. Consolidated is well aware that such a limitation would make its policy less marketable." *Id.* at 287.

The court further found that the assertion of jurisdiction would comport with notions of fair play and substantial justice. *Id.*

The majority of federal appellate courts have similarly held that policies that provide liability coverage within the entire United States will create the minimum contacts necessary for the insurer to be subject to personal jurisdiction in the state where the insured event took place. *See McGow v. McCurry*, 412 F.3d 1207, 1215 (11th Cir. 2005) (by including Georgia within its covered territory, the insurer purposefully sought to provide coverage for accidents in Georgia and had full knowledge that it could be haled into Georgia courts and required to make payments there based on the coverage); *Ferrell v. West Bend Mutual Insurance Co.*, 393 F.3d 786, 791 (8th Cir. 2005) (insurance policy's nationwide-coverage clause established sufficient contacts between the insurer and Arkansas to satisfy the due process clause); *Payne v. Motorists' Mutual Insurance Cos.*, 4 F.3d 452, 456 (6th Cir. 1993) (insurer's choice to provide coverage for all 50 states constituted purposeful availment of any individual state's forum); *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911, 914 (9th Cir. 1990) (insurer purposefully availed itself of Montana's jurisdiction where it contracted to indemnify and defend claims arising there); see also *Eli Lilly & Co. v. Home Insurance Co.*, 794 F.2d 710, 721 (D.C. Cir. 1986) (liability insurer for a manufacturer with nationwide distribution was subject to jurisdiction in any forum where insured was likely to be sued).

Cumberland recognizes the foregoing authority but urges us to rely on *OMI Holdings, Inc. v. Royal Insurance Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998), instead. There, the defendant in a patent infringement suit filed a declaratory judgment action against its insurers in a Kansas federal district court to establish coverage. *Id.* at 1090-91. Kansas's long-arm statute was coextensive with the requirements of federal due process. *Id.* at 1090. The insurers moved to dismiss the action, based

on a lack of personal jurisdiction. The district court denied the motion, reasoning that, by agreeing to defend the policyholder against claims anywhere in the United States, the insurer created the minimum contacts necessary for personal jurisdiction. *Id.* at 1092.

The Tenth Circuit Court of Appeals reversed, finding that the nationwide-territory-of-coverage clause was not sufficient to support the district court's exercise of jurisdiction. In its analysis, the court criticized *Rossman* and other cases applying a similar analysis. It stated that *Rossman* was "troublesome" because:

"[f]irst, the court's holding is based almost entirely on foreseeability. The Supreme Court, however, has cautioned that ' "foreseeability" alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.' *World-Wide Volkswagen*, 444 U.S. at 295 ***. Second, within its foreseeability analysis, by chastising the defendant for having the ability to exclude certain forums from coverage and not exercising that ability, the court placed great weight on what the defendant did not do. Such reliance, however, is clearly at odds with the Supreme Court's mandate that minimum contacts be based on the defendant's affirmative actions which create a substantial connection with the forum state."

*Id.* at 1094.

The court further stated that it disagreed with the assumption that "by agreeing to defend its insured in any forum, an insurer foresees being sued by its *own* insured in any forum when a coverage dispute arises." (Emphasis in original.) *Id.* at 1095.

The *OMI* court did agree that, by including a nationwide-territory-of-coverage clause, the insurer created some showing of minimum contacts with Kansas, albeit "contacts which [were] qualitatively low on the due process scale." *Id.* The court then considered these contacts in light of

-10-

the several factors used to determine whether the exercise of personal jurisdiction violated notions of fair play and substantial justice. It ultimately determined that subjecting the insurers to litigation in Kansas, which did not have a genuine interest in the dispute and with which the insurers had only tenuous contacts, would be unreasonable. Accordingly, it reversed the district court's decision denying the insurers' motion to dismiss for lack of personal jurisdiction. *Id.* at 1098.

Cumberland argues that the *OMI* court correctly reasoned that it does not logically follow that, by agreeing to provide a defense to its insured in a particular state, the insurer also agrees to allow itself to be sued personally in the same state. However, the effect of a nationwide-territory-of-coverage clause relates to the issue of minimum contacts, which alone do not create personal jurisdiction, as they must be considered in light of other factors to determine whether the assertion of jurisdiction would comport with notions of fair play and substantial justice. *Burger King Corp.*, 471 U.S. at 476. Further, both *Rossman* and *OMI* conclude that a nationwide-territory-of-coverage clause creates minimum contacts; the point on which they differ is the strength of those minimum contacts.

We additionally note that the Tenth Circuit subsequently toned down its criticism of *Rossman* in *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd*, 488 F.3d 1282 (10th Cir. 2007). There, the court stated that "insurers establish minimum contacts with a forum state by *affirmatively* choosing to include the forum state in the territory of coverage." (Emphasis in original.) *Id.* at 1290. The court further stated:

> "By reserving the right to defend insured entities and by agreeing to make indemnity payments within the territory of coverage, the Insurers have purposefully availed themselves of the privileges and benefits of conducting business in any forum state within the covered territory.

These actions are neither incidental nor accidental; the Insurers have explicitly contracted for them and have received higher premiums in exchange for them." *Id.* at 1291. Still, we recognize that the Tenth Circuit reaffirmed its holding that such contacts were relatively weak. *Id.*

In any event, consistent with *Bevins*, we agree with the majority of the federal appellate courts that a nationwide-territory-of-coverage clause gives rise to the minimum contacts necessary for personal jurisdiction over the insurer if the forum is where the insured event took place. Minimum contacts must proximately result from the defendant's own actions that create a substantial connection with the forum state. *Burger King Corp.*, 471 U.S. at 475. As the aforementioned federal appellate courts have stated, and as the Tenth Circuit has also recognized, an insurer makes a deliberate choice to include the entire nation in its territory of coverage for the purpose of offering a marketable insurance plan and receiving higher premiums. See *Rossman*, 832 F.2d at 287. "Thus litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer" (*Farmers Insurance Exchange*, 907 F.2d at 914), and the nationwide coverage constitutes "purposeful availment of any individual state's forum" (*Payne*, 4 F.3d at 456). Further, contrary to the concerns of *OMI*, where an insured sued its insurer outside the insurer's forum, here a party injured by the insured sued the insured in the injured party's forum and now seeks to collect from the insurer. Accordingly, the first factor required for specific jurisdiction is present: Cumberland had minimum contacts with Illinois such that it had fair warning that it may be haled into an Illinois court.

The second factor required for specific jurisdiction, that the action arose out of or was related to Cumberland's contacts with Illinois, is also satisfied. Cumberland issued defendant liability policies

that included Illinois in their coverage area; defendant was found to have injured parties in Illinois; and plaintiffs are seeking recovery from Cumberland in Illinois for damages allegedly covered by defendant's policies.

Last, we look at the third factor, whether it is reasonable to require Cumberland to litigate in Illinois. In making this assessment, we look at the minimum contacts in light of the following considerations to determine whether asserting jurisdiction would comport with notions of fair play and substantial justice: the burden on the defendant; the forum's interest in adjudicating the dispute; the plaintiff's interest in convenient and effective relief; the judicial system's interest in obtaining the most efficient resolution of disputes; and the states' shared interest in furthering fundamental substantive social policies. *Burger King Corp.*, 471 U.S. at 476-77. Cumberland's burden of litigating in Illinois is not unreasonable considering that it was, under its insurance policy, willing to defend its insured nationwide. Illinois has an interest in adjudicating the dispute, because Illinois parties have allegedly been injured and have obtained an agreed order in their favor in an Illinois court. Cumberland argues that the vast majority of class members are not Illinois residents, but because some are Illinois residents and the judgment is from an Illinois court, this state has an interest in adjudicating the dispute between plaintiffs and Cumberland. This consideration relates to the next factors as well; plaintiffs' interest in convenient and effective relief and the judicial system's interest in obtaining the most efficient resolution of disputes both favor Illinois, as plaintiffs are seeking to satisfy an Illinois judgment. See *Payne*, 4 F.3d at 457 ("[I]t would be a muddled policy for courts to decide that there was no personal jurisdiction in such situations as this, forcing the already-once successful plaintiffs into a foreign jurisdiction *** to collect their judgment."). These factors distinguish this case from *OMI*, where the insurer was a foreign company and the forum state was

held to have "no genuine interest in the dispute." *OMI Holdings Inc.*, 149 F.3d at 1098. The states' shared interest in furthering social policies does not weigh in favor of either Illinois or an alternative forum, presumably Pennsylvania. Since the considerations as a whole weigh in favor of asserting jurisdiction in Illinois, it is reasonable to require Cumberland to litigate here under federal due process standards.

We now look at Illinois due process requirements. To satisfy the due process provision of the Illinois Constitution, a court may exercise jurisdiction "only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Cumberland argues that jurisdiction is not reasonable in this case because it committed no acts in Illinois in relation to the policies it issued defendant and in fact it committed virtually no acts in Illinois of any kind. Cumberland argues that the focus of the citation proceeding, if it is allowed to proceed, will be on insurance policies that were issued by a Pennsylvania resident to a Pennsylvania resident, and Illinois law will not even come into play in determining coverage under the policies. Cumberland reiterates that most of the class members are not Illinois residents, and it argues that most of the alleged actionable injuries occurred outside of Illinois.

Cumberland's argument is not persuasive. Under its insurance policies, Cumberland was willing to defend its insured against claims in Illinois, thereby invoking the privileges and benefits of the Illinois courts. Plaintiffs have obtained a judgment in Illinois against Cumberland's insured, the judgment can be satisfied only through insurance proceeds, and the judgment covers acts that allegedly fall under Cumberland's policies and for which Cumberland allegedly was obligated to

defend its insured in this forum. Under these circumstances, it is fair, just, and reasonable to require Cumberland to litigate in Illinois.

In sum, the trial court correctly concluded that exercising specific personal jurisdiction over Cumberland comports with both federal and Illinois due process standards. Based on our resolution of this issue, we do not examine whether Illinois also has general jurisdiction over Cumberland.

### B.  Service

Cumberland additionally argues that the trial court erred by finding that Cumberland was amenable to service under section 123 of the Insurance Code. Plaintiffs respond that Cumberland was properly served under section 123 and, more importantly, that the issue is moot because they subsequently served Cumberland directly with citations.  As stated, plaintiffs initially served Cumberland through the Department of Insurance on October 13, 2009.  On May 28, 2010, plaintiffs served an amended citation on the Department of Insurance and on Cumberland directly via certified mail.  On June 29, 2010, the trial court denied Cumberland's motion to dismiss, finding in relevant part that the original service complied with Insurance Code requirements.  The trial court also granted plaintiffs leave to file a third citation.  Cumberland sought leave to appeal on July 26, 2010.  Plaintiffs filed a third citation the following day and served it on Cumberland on August 2, 2010.

Cumberland argues that the issue of the applicability of section 123 is not moot, because the third citation was issued after its petition for leave to appeal and the trial court has not yet ruled on the validity of the service of that citation.  However, a "court should not decide a case when the occurrence of events after an appeal has been filed makes it impossible for the reviewing court to render effectual relief and the judgment would have only an advisory effect." *Estate of Bass v. Katten*, 375 Ill. App. 3d 62, 66 (2007).  That is the situation here, as even if we determined that

Cumberland was not properly served under the Insurance Code, we would not reverse the trial court's denial of Cumberland's motion to dismiss, because Cumberland was subsequently served on two other occasions. Furthermore, the May 28, 2010, service occurred before the hearing on Cumberland's motion to dismiss. At the hearing, Cumberland argued against the validity of that service. However, Cumberland fails to argue in its brief why the May 28 service may have been defective, thereby forfeiting the issue for review. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006) (points not argued in the appellant's brief are forfeited). Accordingly, we need not address the propriety of the initial service through the Department of Insurance.

III. CONCLUSION

For the reasons stated, we affirm the judgment of the Lake County circuit court.

Affirmed.