# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125

---

| | |
|---|---|
| Appellate Court Caption | AASONN, LLC, Plaintiff-Appellant, v. MARY J. DELANEY and PERFORMANCE MANAGEMENT STRATEGIES, LLC, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-10-1125 |
| Filed | December 2, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in dismissing plaintiff's third amended complaint for breach of contract and fraud due to the lack of personal jurisdiction, since defendants, both from New York, purposefully established sufficient minimum contacts with Illinois and requiring defendants to litigate plaintiff's claims in Illinois would not offend traditional notions of "fair play and substantial justice," and, furthermore, plaintiff sufficiently pleaded the fraud counts of its complaint, despite defendants' argument that the complaint did not meet the heightened specificity standard required for pleading fraud, especially when the allegations were very detailed as to the hours billed by defendants, the tasks represented to have been completed, and the specific tasks alleged to have been left undone. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09-L-797; the Hon. John T. Elsner, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on Appeal

Lawrence C. Cassano, of Cassano & Associates, of Naperville, for appellant.

Kenneth T. Kubiesa, of Kubiesa Associates, P.C., of Oakbrook Terrace, for appellees.

Panel

JUSTICE ZENOFF delivered the judgment of the court, with opinion.

Justices Bowman and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Aasonn, LLC, appeals from the trial court's order granting the motion by defendants, Mary J. Delaney and Performance Management Strategies, LLC, to dismiss its third amended complaint for lack of personal jurisdiction. For the following reasons, we reverse and remand for further proceedings.

¶ 2                      BACKGROUND

¶ 3    Aasonn sued defendants for breach of contract and fraud. Defendants moved to dismiss for lack of personal jurisdiction, pursuant to section 2-301 of the Code of Civil Procedure (Code) (735 ILCS 5/2-301 (West 2010)). The trial court initially found that it did not have jurisdiction over defendants on the breach of contract claims. With respect to the fraud claims, the court found that the pleading, though conclusory, would be a sufficient basis upon which to assert personal jurisdiction. The court granted Aasonn leave to replead three times. The operative pleading is Aasonn's third amended complaint for breach of contract and fraud.

¶ 4    We derive the following facts from the third amended complaint and the affidavits and exhibits in the record. Aasonn was an Illinois limited liability company. Delaney was a New York resident and the president of Delaney Consulting Services, LLC. Aasonn and Delaney Consulting Services–now known as Performance Management Strategies, LLC, a New York limited liability company–entered into a "Strategic Alliance Agreement" (Agreement). Pursuant to the Agreement, defendants performed consulting and implementation services related to the computer software business of SuccessFactors, Inc., a Delaware corporation with its principal place of business in California. SuccessFactors had previously contracted directly with its consultants, including Delaney, but at some point prior to March 2007, it terminated those relationships. SuccessFactors told its consultants that if they wanted to continue providing their services, they would have to contract with one of its business partners. Several of SuccessFactors' business partners made presentations to Delaney and the

-2-

other consultants.

¶ 5    In particular, SuccessFactors referred Delaney to Aasonn, one of its business partners, by arranging an online meeting between Aasonn's president, Allen Peterson, and nine of SuccessFactors' consultants, including Delaney. Peterson then scheduled a "WebEx conference" with the consultants and sent the meeting information to them at their e-mail addresses, which SuccessFactors had provided to him. Following the meeting, Peterson, in Illinois, negotiated the Agreement terms with Delaney, in New York, by telephone, e-mail, and Internet conferencing. In the negotiations, Delaney apparently also took a leading role on behalf of the other eight consultants. Aasonn sought an individual contract with each of the nine consultants, but it made each contract contingent on the acceptance of the other eight consultants. Peterson sent a final copy of the Agreement, unexecuted, to Delaney on March 20, 2007. Two days later, Delaney e-mailed Peterson that she had executed the Agreement and returned it to Aasonn. She requested that Peterson execute the Agreement and send her a copy. According to Peterson, when he received the Agreement in Illinois, he "concluded the contracting process on behalf of Aasonn and sent a confirmation to Delaney."

¶ 6    Pursuant to the terms of the Agreement, Aasonn and defendants created a "strategic alliance to perform certain complementary consulting services." The initial term of the Agreement was 2 years, and it would be automatically renewed for successive 1-year periods unless either party gave written notice of termination at least 30 days prior to the date of expiration. During the term of the Agreement, defendants were prohibited from engaging in "any business that is competitive with the types and kinds of business" conducted by Aasonn. Defendants were further restricted from using any acquired confidential information other than for the benefit of Aasonn. Aasonn acted either as a subcontractor for SuccessFactors (which referred clients to Aasonn) or as a prime contractor for clients that Aasonn or defendants secured.[1] Aasonn then offered assignments to defendants through "statements of work" (the record contains "new project assignment forms") setting forth the number of hours allocated toward the completion of each project and the rate of compensation. It was defendants' responsibility to manage their consulting activities within the scope of the statements of work, but any change in that scope required advance approval from Aasonn. Defendants were also required to obtain advance approval from Aasonn for any hours of work in excess of those allotted in the statements of work. Defendants were not permitted to use employees, contractors, or other agents to fulfill their contractual obligations unless Aasonn approved of such in advance. The Agreement required defendants to submit to Aasonn itemized monthly invoices, which Aasonn was to pay within 30 days of receipt. In turn, Aasonn directly billed the clients. The Agreement contained an Illinois choice-of-law provision.

¶ 7    From March 2007 through May 2009, Aasonn directed in excess of 20 projects to defendants, involving clients in New Jersey, Connecticut, New York, Texas, California, and Abu Dhabi (United Arab Emirates). Aasonn was in regular contact with defendants, and

---

[1]Based on the rate of compensation designated in the invoices at issue in Aasonn's complaint, we discern that Aasonn was acting as SuccessFactors' subcontractor.

work product and communications were exchanged and reviewed by and between the parties via telephone, facsimile, e-mail, Internet messaging, and Internet connections. Defendants submitted to Aasonn, via e-mail, monthly invoices for work performed, and they contemporaneously entered into Aasonn's online project management system the details of hours worked on each project. Once Aasonn verified the number of hours invoiced with the hours entered into the project management system, Aasonn submitted to defendants electronic payment from its Illinois bank account. Defendants allegedly submitted to Aasonn false billing statements for work they did not perform on five of the projects.

¶ 8    Defendants moved to dismiss Aasonn's third amended complaint for lack of personal jurisdiction. After hearing argument, the trial court granted the motion. Aasonn timely appealed.

¶ 9                                    ANALYSIS

¶ 10    Aasonn argues that the trial court erred in dismissing its complaint for lack of personal jurisdiction. The plaintiff bears the burden of proving a *prima facie* case for jurisdiction over a nonresident defendant. *MacNeil v. Trambert*, 401 Ill. App. 3d 1077, 1080 (2010). Conflicts in the affidavits and pleadings are resolved in the plaintiff's favor. *MacNeil*, 401 Ill. App. 3d at 1080. A plaintiff's *prima facie* case for jurisdiction can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. *MacNeil*, 401 Ill. App. 3d at 1080. When, as here, the trial court decides the issue of personal jurisdiction based solely on documentary evidence, our review is *de novo*. *MacNeil*, 401 Ill. App. 3d at 1080.

¶ 11    Illinois courts may assert personal jurisdiction over a nonresident defendant only if the assertion comports with section 2-209 of the Code (735 ILCS 5/2-209 (West 2010)), known as Illinois' long-arm statute, and with the due process guarantees of both the Illinois and the United States Constitutions. *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 117 (2001). The long-arm statute provides, in relevant part:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;
                              * * *

(7) The making or performance of any contract or promise substantially connected with this State;
                              * * *

(c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209 (West 2010).

¶ 12    Prior to the enactment in 1989 of the "catch-all provision" in section 2-209(c), courts analyzed whether the assertion of personal jurisdiction over a nonresident defendant was

permitted by the long-arm statute and then separately examined due process concerns. *Old Orchard Urban Ltd. Partnership v. Harry Rosen, Inc.*, 389 Ill. App. 3d 58, 64 (2009). However, because section 2-209(c) is coextensive with state and federal due process requirements, Illinois courts now treat it as an independent basis for exercising personal jurisdiction. *MacNeil*, 401 Ill. App. 3d at 1080. Therefore, we need examine only due process considerations under the federal and state constitutions. *Pace Communications Services Corp. v. Express Products, Inc.*, 408 Ill. App. 3d 970, 973 (2011). Nonetheless, as a due process analysis focuses on the defendant's conduct, the bases of jurisdiction that Aasonn argues under section 2-209(a) provide the groundwork for our analysis. See *MacNeil*, 401 Ill. App. 3d at 1081 (whether due process concerns are satisfied is dependent on the defendant's conduct).

¶ 13    Illinois due process requires that a court exercise jurisdiction over a nonresident defendant only "when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). Our supreme court has held that the Illinois Constitution contains an independent guarantee of due process separate from its federal counterpart. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 387 (2005) (citing *Rollins*, 141 Ill. 2d at 275). However, it is generally true that, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns. *Wiggen v. Wiggen*, 2011 IL App (2d) 100982, ¶ 22 n.1 (citing *Keller v. Henderson*, 359 Ill. App. 3d 605, 620 (2005)). Consequently, and as the parties make no argument that the analyses diverge, we address only the federal due process standard. See *Wiggen*, 2011 IL App (2d) 100982, ¶ 22 n.1.

¶ 14    Federal due process requires that a defendant have "certain minimum contacts" with the forum state such that the assertion of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Pace Communications*, 408 Ill. App. 3d at 973. The minimum contacts necessary for jurisdiction depend on whether general or specific jurisdiction is asserted. *Pace Communications*, 408 Ill. App. 3d at 974. General jurisdiction exists when a defendant has continuous and systematic contacts with the forum state and may be exercised in a suit not arising out of or related to the defendant's contacts with the forum. *Pace Communications*, 408 Ill. App. 3d at 974. Specific jurisdiction, which Aasonn asserts here, exists when the defendant purposefully directed its activities at the forum's residents and the cause of action arose out of those contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Pace Communications*, 408 Ill. App. 3d at 974. An Illinois court may assert specific jurisdiction over a nonresident defendant if: (1) the defendant had minimum contacts with Illinois such that it was fairly warned that it may be haled into an Illinois court; (2) the action arose out of or was related to the defendant's contacts with Illinois; and (3) it is reasonable to require the defendant to litigate in Illinois. *MacNeil*, 401 Ill. App. 3d at 1081. The minimum contacts must be based on "some act by which a defendant purposely avails himself of the privilege of conducting activities within a state, thus invoking the benefits and protections of its laws." *MacNeil*, 401 Ill. App. 3d at

1081. The purposeful availment requirement ensures that jurisdiction will not be obtained as the result of random, fortuitous, or attenuated contacts. *Burger King*, 471 U.S. at 475; *Morgan, Lewis & Bockius LLP v. City of East Chicago*, 401 Ill. App. 3d 947, 954 (2010).

¶ 15    It is undisputed here that Aasonn's complaint alleging breach of contract and fraud arose from defendants' contacts with Illinois. At issue is whether defendants had minimum contacts with Illinois such that they were fairly warned that they might be haled into an Illinois court and whether requiring them to litigate in Illinois was unreasonable. Aasonn argues that defendants subjected themselves to personal jurisdiction in Illinois by transacting business in Illinois under section 2-209(a)(1) of the long-arm statute, by entering into a contract substantially connected with Illinois under section 2-209(a)(7), and by committing a tortious act in Illinois under section 2-209(a)(2). Defendants respond that Aasonn has failed to show "any act by which Defendants purposefully availed themselves of the protections and benefits of Illinois law."

¶ 16    When parties have contacts based on a contractual or business relationship, factors relevant to purposeful availment include: (1) who initiated the transaction, (2) where the contract was entered into, and (3) where performance was to occur. *Wiggen*, 2011 IL App (2d) 100982, ¶ 30. Because the formation of a contract represents an intermediate step linking prior negotiations with future consequences, the court should also consider other relevant circumstances such as the parties' prior negotiations, the contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Burger King*, 471 U.S. at 479; *Commerce Trust Co. v. Air 1st Aviation Cos.*, 366 Ill. App. 3d 135, 143-44 (2006). A choice-of-law provision in the contract, though not dispositive, is relevant. *Bolger v. Nautica International, Inc.*, 369 Ill. App. 3d 947, 952 (2007). To assert personal jurisdiction based on a defendant's tortious conduct in the state, the plaintiff must allege that the defendant performed a tortious act or omission and caused an injury in Illinois. *Arthur Young & Co. v. Bremer*, 197 Ill. App. 3d 30, 36 (1990). Where, as in the instant case, the injury is economic rather than physical or emotional, the plaintiff must also allege facts showing that the defendant intended to affect an Illinois interest. *West Virginia Laborers Pension Trust Fund v. Caspersen*, 357 Ill. App. 3d 673, 678 (2005). This intent requirement mirrors the purposeful-availment requirement. *Hyperquest, Inc. v. NuGen I.T., Inc.*, 627 F. Supp. 2d 884, 894 (N.D. Ill. 2008).

¶ 17    Here, regarding the first factor, defendants did not initiate the contract; either Aasonn or SuccessFactors did. Delaney had been a consultant for SuccessFactors prior to entering into the Agreement with Aasonn. SuccessFactors sought to change the nature of its relationship with Delaney, terminating their direct relationship and informing Delaney that, if she wanted to continue performing consulting work related to its software, she would have to work with one of its business partners. SuccessFactors then arranged an online meeting between Aasonn and Delaney. Aasonn e-mailed materials for the meeting to Delaney. Notwithstanding Aasonn's conclusion to the contrary, defendants did not initiate the parties' business relationship.

¶ 18    Nevertheless, we agree with Aasonn that Delaney pursued the relationship with Aasonn to continue her consulting work related to SuccessFactors' software. The record reveals that several of SuccessFactors' business partners made presentations to Delaney and other former

-6-

SuccessFactors consultants. Moreover, Delaney apparently represented the interests of eight other consultants in the negotiations with Aasonn, and her contract with Aasonn was contingent on those consultants signing contracts with Aasonn. Delaney had a fundamental choice to terminate her SuccessFactors consulting work or to continue it. If she chose the latter, she had the choice of working with Aasonn or working with another entity. Delaney, leading the negotiations, chose Aasonn, an Illinois company.

¶ 19    With respect to the second factor, the contract was entered into in Illinois. Aasonn's president, Allen Peterson, sent an unsigned copy of the Agreement to Delaney in New York. She signed it and returned it to Peterson in Illinois, requesting a copy of the document after he signed it. Peterson signed the contract in Illinois and transmitted a copy to Delaney. Thus, the last act necessary to effectuate the validity of the contract was done in Illinois, where the contract was executed when Peterson signed it on Aasonn's behalf. See *Ideal Insurance Agency, Inc. v. Shipyard Marine, Inc.*, 213 Ill. App. 3d 675, 681 (1991) (stating that Illinois law is well established that a contract is formed in the place where the last act necessary to give validity to the contract occurs).

¶ 20    The third factor, where performance was to occur, also weighs in favor of jurisdiction. It is true that defendants performed consulting work from New York–not Illinois–for clients located in California, Texas, New Jersey, Connecticut, New York, and Abu Dhabi. However, based on the terms of their Agreement, defendants could perform that consulting work only by virtue of their relationship with Aasonn in Illinois. Indeed, defendants were prohibited from engaging in any business competitive with Aasonn. Moreover, Aasonn exercised a great deal of control over defendants' performance under the Agreement. Through the Agreement, the parties created an ongoing relationship of at least two years. Aasonn was designated as a subcontractor for SuccessFactors, which referred clients to Aasonn. Aasonn assumed the ultimate responsibility for maintaining relationships with those clients. Aasonn, in turn, offered projects to defendants via new project assignment forms, which, if they chose to accept, defendants signed and returned to Aasonn in Illinois. The forms recited the client contact information, the work to be performed, the number of hours in which it was to be performed, and the rate of compensation. Any changes to the scope of the work or the number of hours worked, as well as any use of employees or contractors, required advance approval from Aasonn. Defendants were further restricted from using any acquired confidential information other than for the benefit of Aasonn. Invoices and payments went to and from Aasonn in Illinois.

¶ 21    The parties dispute whether defendants submitted work product to Aasonn for review. In support of their motion to dismiss, defendants attached Delaney's affidavit in which she alleged that her work product was reviewed by SuccessFactors' personnel located on the east and west coasts and that her "primary managers" were SuccessFactors' employees. Delaney further averred that her communications with Allen Peterson were limited to sending status reports. Aasonn's response to defendants' motion to dismiss the third amended complaint incorporated its response to defendants' first motion to dismiss, which included Allen Peterson's affidavit. Consequently, Aasonn's response to defendants' motion to dismiss the third amended complaint incorporated Peterson's affidavit, and we will consider it as a counteraffidavit to rebut Delaney's affidavit. Because we must resolve conflicts in the

affidavits in Aasonn's favor (see *MacNeil*, 401 Ill. App. 3d at 1080), we accept the allegations in Peterson's counteraffidavit as true. Therefore, to the extent that Peterson contradicted Delaney's allegation that she sent him only status reports, we must conclude that Delaney did send work product to Peterson for his review. Yet, Peterson did not contradict Delaney's allegation that her work product was reviewed by SuccessFactors. As Peterson did not allege that he was the only one to review Delaney's work product, the allegations in both affidavits could be true. However, SuccessFactors' review of Delaney's work product does nothing to diminish the relationship that Delaney chose to create with Aasonn in Illinois; neither does Delaney's characterization of SuccessFactors' employees as her "primary managers." The Agreement between the parties and their course of dealing demonstrate that substantial performance of the contractual obligations occurred in Illinois.

¶ 22    Defendants argue that their work was not directed toward Aasonn, an Illinois resident, but rather toward the clients, none of whom were Illinois residents. Notwithstanding defendants' prior relationship with SuccessFactors, defendants' argument is unavailing. Even accepting defendants' characterization of Aasonn as a "middleman" between them and SuccessFactors, the clients were Aasonn's clients, not defendants' clients. When defendants chose to establish a relationship with Aasonn, they chose to work through Aasonn in Illinois. Rather than being "minimal," communications between defendants and Aasonn were key to the new relationship between them established by the parties' Agreement. Absent their relationship with Aasonn, defendants would have had no consulting work with those clients.

¶ 23    Moreover, that defendants worked from New York and did not maintain an office in Illinois does not change the fact that they voluntarily entered into a contract creating a substantial connection with Illinois by virtue of the relationship they created with Aasonn. A defendant's lack of physical presence in a forum does not defeat jurisdiction there. *Burger King*, 471 U.S. at 476 (stating that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted"); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir. 1990) (holding that a defendant's physical presence in a forum is not necessary when the nature of telephone and mail contacts in an interstate relationship can justify the assertion of personal jurisdiction).

¶ 24    Considering the quality and nature of defendants' acts, defendants purposefully reached out beyond New York to create a deliberate affiliation with an Illinois company from which they derived financial benefit by accepting in excess of 20 projects. We hold that defendants thus purposefully availed themselves of the privilege of conducting business in Illinois and thereby invoked the benefits and protections of this state's laws. Although not dispositive, the Illinois choice-of-law provision contained in the Agreement supports this conclusion. See *Bolger*, 369 Ill. App. 3d at 952. Therefore, defendants reasonably should have foreseen being haled into an Illinois court. See *Burger King*, 471 U.S. at 480 (stating that the defendant's voluntary acceptance of the plaintiff's long-term and exacting regulations of his business made it, "at the very least, presumptively reasonable" for the forum to exercise personal jurisdiction over the defendant).

¶ 25    Having determined that defendants purposefully established sufficient minimum contacts

in Illinois, we must decide if requiring them to litigate in Illinois would offend traditional notions of " 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). A court may evaluate the burden on the defendant to litigate in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in convenient and effective relief, and the interstate judicial system's interest in the most efficient resolution of a controversy. *Burger King*, 471 U.S. at 477. A defendant who purposefully directed his activities at a forum must present a compelling case to defeat jurisdiction. *Burger King*, 471 U.S. at 477.

¶ 26    Here, although defendants argue that they did not establish sufficient minimum contacts with Illinois, they present no case, let alone a compelling one, as to why jurisdiction is defeated based on traditional notions of fair play and substantial justice. *Morgan, Lewis & Bockius LLP*, 401 Ill. App. 3d at 956; *Viktron Ltd. Partnership*, 326 Ill. App. 3d at 123. We hold that requiring defendants to litigate in Illinois does not offend fair play and substantial justice. Given Aasonn's contractual obligation to pay defendants' monthly invoices within 30 days of receipt, Aasonn has an interest in convenient and effective relief. At this stage of the proceedings, it not clear when Aasonn billed the clients for the work that defendants invoiced; it is even less clear whether Aasonn had any recourse if, as it alleged, it was required to hire other consultants to complete the work that defendants failed to finish. Nonetheless, accepting Aasonn's allegations as true, it suffered the initial, and probably ultimate, financial harm from defendants' alleged conduct. Thus, Illinois has an interest in providing a means of redress for its injured resident. See *Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). Accordingly, because Aasonn established that the trial court's exercise of personal jurisdiction over defendants would comport with federal due process requirements, and because defendants have not presented a compelling case to defeat jurisdiction, the trial court erred in granting defendants' section 2-301 motion to dismiss. See *Burger King*, 471 U.S. at 473-74 (stating that "where individuals 'purposefully derive benefit' from their interstate activities, [citation], it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed").

¶ 27    Given the trial court's conclusion that the fraud counts did not meet the heightened specificity requirements for pleading fraud, on remand, defendants might file a motion pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)) to dismiss the fraud counts for failure to state a cause of action. The sufficiency of a pleading presents a question of law. *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 335 (1997). Because the parties have fully briefed the issue of whether the fraud counts were properly pleaded (using section 2-615 case law), and the trial court already addressed it, in the interest of judicial economy, we address it now. See *Petre v. Kucich*, 331 Ill. App. 3d 935, 944 (2002) (deciding, in the interest of judicial economy, to address an issue likely to recur on remand).

¶ 28    Defendants argue that Aasonn did not meet the heightened specificity standard required for pleading fraud. Unless it is clearly apparent that no set of facts can be proved that would

entitle the plaintiff to relief, a cause of action should not be dismissed pursuant to a section 2-615 motion. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996). A complaint for common-law fraud "must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Connick*, 174 Ill. 2d at 496-97. Conclusory allegations are insufficient. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 771 (2007).

¶ 29     In the instant case, there is no dispute that it was Delaney who made any alleged misrepresentations and that she made them to Nathaniel Peterson when she submitted invoices to Aasonn. The question is whether Aasonn identified any particular false statement of material fact. Defendants argue that, for each of the five projects at issue, Aasonn failed to allege that defendants did not perform the work they invoiced. They assert that Aasonn did not identify any specific task that defendants invoiced but did not perform. Defendants conclude that Aasonn's allegations in its fraud counts merely restate their breach of contract claims–namely, that defendants failed to complete the projects within the budgeted time. We disagree.

¶ 30     The third amended complaint includes the following relevant allegations with respect to the "Energy Cranes" project:

"24. On or about October 14, 2008, Aasonn submitted a New Project Assignment Form to Delaney for customer Energy Cranes ('Energy Cranes Project'). The purchased modules to be implemented by Delaney were identified as 'EE PM/GM,' 'Sprac Comp/LP,' and 'Language Pack.' The total number of hours budgeted for implementation of the modules was 183 hours and the contract rate was to be $110 per hour. ***

* * *

27. On October 31, 2008, Delaney submitted an invoice to Aasonn which included 10 hours of work performed on Energy Cranes–GM Profile, UK Language Pack (Compensation and PM in Phase II). ***

28. On December 4, 2008, Aasonn paid Delaney's October invoice by ACH payment directly to her bank account. ***

* * *

41. In total Delaney invoiced Aasonn for 181 hours of work on the Energy Cranes Project for a total of $19,910, all of which Aasonn has paid.

42. The 183 budgeted hours were sufficient to complete the Energy Cranes Project. Delaney billed Aasonn for and received payment for 181 hours, yet as of Delaney's resignation date, a total of 118 hours of work still remained to be done to complete the project. (See the Affidavit of Nate Peterson attached hereto as Exhibit I.) Thus, Delaney billed and received payment from Aasonn for 116 hours of work she did not perform,

-10-

representing $12,760.00.

43. Delaney billed Aasonn for her performance of the following work for Energy Cranes, and Aasonn paid her for such work, but in fact, Delaney did not actually complete or perform the work:

(a) Implementation and/or configuration of the Enterprise Performance management software module for the customer;

(b) Implementation and/or configuration of a language pack for the customer, the purpose of which is to translate user interface data to another language;

(c) Implementation and/or configuration of the SPRAC version of a compensation software module for the customer;

(d) Such other implementation, configuration and/or work billed but not actually performed by Delaney, as shown by the evidence.

44. After Delaney's resignation from Aasonn, Aasonn retained another contractor to complete the Energy Crane Project. Though Delaney had billed for 181 hours on the Project (which was budgeted for 183 hours in total), after reviewing the status of the Project and meeting with the customer it was determined the contractor had to work on the Project as though it was a brand new one, and Delaney had not performed the work she billed and claimed she performed. The contractor had to meet with the client and go over even the most basic information because it had not been addressed by Delaney. The contractor had to prepare the project plan and deliver it to the customer, prepare the configuration notebook, provide the customer test user information, provide instruction and/or guidance regarding the software, and configure and implement the Enterprise Performance Management, SPRAC Compensation, and language pack software, among other things.

45. Delaney billed virtually all the hours budgeted to complete the Energy Crane Project. Though the budgeted hours were sufficient to complete it in its entirety, Delaney did not come close to completing the Project and a total of 118 hours of work still remained to be done, and had to be done by a replacement contractor, to complete the Project after Delaney's resignation.

46. Delaney billed for the work set forth above in paragraph 43, which work she did not in fact perform. Thus, Delaney's billing entries were false.

47. Delaney submitted billing entries for work she did not actually perform, and did so with knowledge of their falsity and an intent to induce Aasonn to pay her, which Aasonn subsequently did to its detriment."

Similar allegations were included for the other four projects at issue. These paragraphs were incorporated into the specific counts alleging fraud (one each against Delaney and Performance Management Strategies, LLC). Aasonn then alleged that "Delaney represented to [Aasonn] that certain work was completed by submitting invoices for said work. The representations were false ***."

¶ 31    Taken in their entirety, the allegations of the third amended complaint were pleaded with sufficient specificity. The alleged misrepresentations of fact consisted of the invoices

-11-

themselves in which Delaney represented that she had completed certain work. Aasonn's allegations were very detailed as to the hours billed, the tasks represented to have been completed, and the specific tasks alleged to have been left undone. We cannot fathom what specific facts could possibly be added to the complaint.

¶ 32 We also note that falsely representing that one has completed certain tasks differs from breaching a contract where one fails to perform its obligations. As we have explained, "We believe that a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Zankle v. Queen Anne Landscaping*, 311 Ill. App. 3d 308, 312 (2000) (addressing a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010))). Accordingly, Aasonn sufficiently pleaded its fraud counts.

¶ 33 For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause is remanded for further proceedings consistent with this opinion.

¶ 34 Reversed and remanded.