Manford M. PAYNE and Sue Payne, Plaintiffs–Appellees,

Canal Insurance Company and National Liability and Fire Insurance Company, Intervenors–Appellees,

v.

MOTORISTS' MUTUAL INSURANCE COMPANIES, Defendant–Appellant.

No. 92–6097.

United States Court of Appeals, Sixth Circuit.

Argued June 11, 1993.

Decided Sept. 10, 1993.

---

Charles E. Daniel (argued), Ward S. Whelchel (briefed), Knoxville, TN, for plaintiffs-appellees.

Weldon E. Patterson (briefed), Poore, Cox, Baker, Ray & Byrne, Knoxville, TN, for Canal Ins. Co.

Rebecca L. Ottinger, Greeneville, TN, for National Liability and Fire Ins. Co.

Dan D. Rhea (argued and briefed), F. Michael Fitzpatrick (briefed), Arnett, Draper & Hagood, Knoxville, TN, for Motorists' Mut. Ins. Companies.

Before: KEITH and RYAN, Circuit Judges; and WELLFORD, Senior Circuit Judge.

RYAN, Circuit Judge.

The defendant, Motorists' Mutual Insurance Companies, appeals following final judgment in favor of the plaintiffs, Manford and Sue Payne, in this diversity action for recovery on an automobile insurance policy. On appeal, the sole issue presented is whether the district court correctly concluded that it had personal jurisdiction over the defendant. Because the district court properly found that it had personal jurisdiction, we shall affirm.

## I.

Motorists' Mutual, an Ohio insurance company based in Columbus, sold an automobile liability insurance policy to Karl Van Walsen, a locally-operating moving contractor also based in Columbus. The policy covered vehicles that Van Walsen leased from companies such as Hertz and Penske, and which he would in turn lease to his customers, usually on a month-to-month basis. Van Walsen's business did not require him to lease vehicles for use outside of Ohio, or even outside the general Columbus area. Instead, the record

demonstrates, the business operated exclusively in Ohio. However, the lease agreements were made without limitation as to use of the vehicles throughout the United States and Canada.

The policy, too, explicitly provided coverage, without any territorial limitation, for the United States and Canada. Motorists' Mutual thus contracted to defend Van Walsen in lawsuits brought against him in any of the fifty states or Canada. The policy contained an exception, however, rescinding the coverage on any vehicle while it was driven by a man named Harold Hunter. Hunter was a friend and business associate of Van Walsen's, but because of a 1989 DUI conviction, Motorists' viewed Hunter as an unacceptable risk.

In April 1989, Van Walsen loaned Hunter one of the leased vehicles so that Hunter, along with two of Hunter's friends, could deliver some furniture to a "lady friend" of Van Walsen's in Florida. The trip was strictly personal, and had nothing to do with Van Walsen's business. Van Walsen paid the expenses for the trip, including fuel, truck expenses, and food, but paid the men no wages. All three men either had drivers' licenses or were eligible for them, and all three had permission from Van Walsen to drive the truck.

On their return from Florida to Columbus, the vehicle was involved in a car accident in east Tennessee. All three men were killed. The accident also injured the plaintiff, Manford Payne.

Motorists' denied coverage, alleging that Hunter was driving the vehicle at the time of the collision, and asserting that its policy therefore provided no coverage for the accident. The Paynes sued Van Walsen, as the vehicle's lessee, in federal court in Tennessee. They recovered a judgment in the total amount of $275,000, as compensation for personal injury and loss of consortium arising from the collision. The addition of subrogated property damage claims by another insurer against Van Walsen increased the claim to over $300,000. Motorists' did not defend that suit, since it had denied coverage.

Suing as third-party beneficiaries of Van Walsen's insurance contract, the Paynes sued Motorists' in federal court in Tennessee for breach of contract. Motorists' moved to dismiss for lack of personal jurisdiction, arguing that it had no contacts with the state of Tennessee. Motorists' claimed it had done no business of any kind in Tennessee since February 1987, and was not licensed or authorized to do so; that it maintained no office or agent in Tennessee, that it did not maintain a bank account there; and that Van Walsen's policy was issued in Ohio to a citizen of Ohio and covered motor vehicles registered in Ohio. The district court, however, denied the motion, relying on decisions from the Ninth and the Fourth Circuits, which it interpreted as having "held that due process is not offended by subjecting a motor vehicle liability insurance carrier to suit in the forum in which the insured motor vehicle was involved in a collision."

At trial, Motorists' defended on the sole ground that Hunter was driving, and that there was, as a result, no coverage. The jury, however, decided otherwise, and rejected Motorists' proffered defense. Motorists' was, accordingly, held liable by the court to the extent of the policy's $300,000 limit.

Motorists' Mutual filed this timely appeal.

## II.

■ Challenges to a court's exercise of personal jurisdiction present a question of law, founded on the due process clause. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–73, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985). We review such challenges *de novo*. *Tobin v. Astra Pharmaceutical Products, Inc.*, 993 F.2d 528, 542 (6th Cir.1993).

## III.

### A.

Motorists' characterizes its contractual agreement to defend Van Walsen in any suit as an "alleged and purely executory duty." (Emphasis omitted.) It concedes, however, that the object of the insurance contract was to protect Van Walsen from the conse-

quences of lawsuits that may have been brought against him anywhere in the United States, and further concedes that "an automobile liability insurer expects to be called to defend its mobile customers in all 50 states." Motorists' nonetheless contends that it has taken no action that could be construed as purposeful availment of the privilege of conducting activities in Tennessee, and attempts to draw a distinction between the expectation of defending its insured when he gets haled into court, and the lack of expectation of being haled into court itself, as a named defendant.

### B.

▇▇ Because subject matter jurisdiction in this case is based on diversity of citizenship, the law of the forum state, Tennessee, governs whether the court may exercise personal jurisdiction over nonresident defendants. *See Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). The Tennessee long-arm statute, Tenn.Code Ann. § 20–2–214(a)(6), has been interpreted as coterminous with the limits on personal jurisdiction imposed by the due process clause. *Masada Investment Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn.1985). Thus, the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.

▇▇ This court has devised a three-part test for determining when the exercise of personal jurisdiction is appropriate in the absence of a continuous relationship between the forum and the defendant. *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir.1968). The so-called "outer limits of *in personam* jurisdiction based on a single act" are as follows:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough

connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Id.* at 381.

The Ninth Circuit's approach is the same, as illustrated by *Farmers Insurance Exchange v. Portage La Prairie Mutual Insurance Co.*, 907 F.2d 911 (9th Cir.1990), a case relied on by the district court in its decision. *Farmers* involved a single-vehicle accident in which both Farmers and Portage were obligated to provide coverage. Farmers was a California insurer doing business in Montana, while Portage was a Canadian insurer that issued no policies in Montana and had no agents there. The accident occurred in Montana. The driver was insured under a policy issued by Farmers in Montana, while the vehicle's owners, Canadian residents who later moved to Montana, were insured by Portage. Portage argued that it committed no act that would bring it within the scope of the Montana long-arm statute. The Ninth Circuit disagreed, however, and found that the exercise of personal jurisdiction over Portage would be consistent with due process. Applying a *Southern Machine*-type test, it held that although Portage had no substantial or continuous contacts with the forum, jurisdiction existed because 1) Portage performed some act by which it purposefully availed itself of the privilege of conducting activities in the forum, 2) the claim arose out of Portage's forum-related activities, and 3) the exercise of jurisdiction was reasonable.

We believe that the reasoning of *Farmers* is sound and applies in this case. In *Farmers*, the court held that the purposeful availment prong of the test was satisfied because the policy coverage extended into Montana and an insured event resulted in litigation there. It reasoned that " '[a]s an automobile liability insurer, [Portage] could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there.' " *Id.* at 914 (quoting *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 286 (4th Cir.1987) [1]). It pointed out that had Portage

---

1. In *Rossman,* the Fourth Circuit followed the same approach as that employed by the Ninth Circuit in *Farmers. Rossman* was also relied on by the district court.

wished to avoid suit in any particular state, it could have excluded that state from its policy territory. *Id.* The court reasoned that this result did not offend the Supreme Court's dictate that foreseeability alone cannot confer jurisdiction:

> Unlike the automobile sellers in *World–Wide Volkswagen* [*Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)], automobile liability insurers contract to indemnify and defend the insured for claims that will foreseeably result in litigation in foreign states.... Thus *litigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer.* Moreover, unlike a product seller or distributor, *an insurer has the contractual ability to control the territory into which its "product"—the indemnification and defense of claims—will travel.*

*Id.* (footnote and citation omitted) (emphasis added).

 This reasoning is equally apt in the case presented here. Motorists' purposefully availed itself of the Tennessee forum by contractually providing explicit insurance coverage for any accidents in Tennessee.[2] The fact that Motorists' chose to provide coverage for all fifty states—indeed, such coverage is almost certainly the only kind of marketable auto insurance—constitutes purposeful availment of any individual state's forum.

The *Farmers* court found that the second, "arising out of" requirement was satisfied because had it not been for Portage's refusal to settle, Farmers would not have needed to bring suit as a third-party beneficiary to Portage's promise to provide coverage in Montana. "But for" Portage's alleged breach of promise to defend its insured in Montana, therefore, the suit would not have arisen. Here, the event giving rise to this suit was an accident involving a vehicle of Van Walsen, Motorists' insured, in Tennessee. Contrary to the defendant's protestations, it matters not that this suit is a secondary action subsequent to the initial finding of

liability. Motorists' sole defense is that there was no coverage for the accident, and the coverage question—more precisely, the question of whether Hunter was driving—can only be determined by reference to the evidence generated by the accident. Thus, Tennessee is the forum out of which this action arose, because it was in Tennessee that Motorists' insured caused an accident, and it is the accident that gave rise to this suit.

Finally, the *Farmers* court concluded that the facts of its case satisfied the third requirement of "reasonableness":

> Portage voluntarily contracted to provide insurance coverage for travel in Montana. Agents of Portage allegedly had actual knowledge that the vehicle would be driven to Montana. Farmers' [ ] defense and settlement in Montana state court was foreseeable. Because Portage has already investigated the claim and paid on the medical coverage in Montana, the additional burden of litigating the liability coverage there would be minimal. Moreover, Montana has a "great interest in regulating bad faith by insurance companies in the state." ...
>
> We recognize that Canada provides an alternative forum, but Montana will provide at least as an efficient forum for the dispute because the accident occurred there, both parties have undertaken investigations there, and the driver's permissive use of the vehicle occurred there.

*Id.* at 915.

Here, it is eminently reasonable that Tennessee serve as the forum, when that is the location of the accident and of many witnesses. As we have already discussed, the evidence required to decide the coverage question—Motorists' Mutual's sole defense—depends entirely on the accident. This observation undercuts Motorists' Mutual's argument as to the significance of the distinction between the expectation of defending its insured when he gets haled into court, and the lack of expectation of being haled into court

---

2. Motorists' correctly points out that, as the record makes abundantly clear, Van Walsen did not run an *interstate* moving company. This fact is, however, immaterial to the conclusion that Mo-

torists' purposefully availed itself of the Tennessee forum, because that conclusion is based solely on the fact that Motorists' contracted to defend Van Walsen in, *inter alia*, Tennessee.

itself as a named defendant; while this may be significant in some cases, in this case, there are many reasons why Tennessee would be a preferred and efficient forum.

Although the defendant complains bitterly about being hauled into court as a named defendant in an insurance coverage dispute, it asserts willingness to defend its insured in a tort action. We note that when its insured *was* sued in the tort action originally, the defendant asserted its right not to defend, believing that the insured had breached the insurance contract. It was, the jury in this case found, incorrect in taking this position. Its current position is therefore untenable; it would be a muddled policy for courts to decide that there was no personal jurisdiction in such situations as this, forcing the already-once successful plaintiffs into a foreign jurisdiction in order to collect their judgment. Such a policy would reward insurers for dragging their heels and refusing to pay claims, no matter how legitimate.

**AFFIRMED.**