RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

KEVIN MILLER,

        *Plaintiff-Appellant,*

    *v.*

AXA WINTERTHUR INSURANCE COMPANY,

        *Defendant-Appellee.*

No. 11-1751

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:10-cv-1057—Paul Lewis Maloney, Chief District Judge.

Argued: July 18, 2012

Decided and Filed:  September 13, 2012

Before:  SILER and KETHLEDGE, Circuit Judges; MURPHY, District Judge.[*]

_____

## COUNSEL

_____

**ARGUED:** Graham K. Crabtree, FRASER, TREBILCOCK, DAVIS & DUNLAP, P.C., Lansing, Michigan, for Appellant.  Clyde M. Metzger, FOLEY, BARON & METZGER, PLLC, Livonia, Michigan, for Appellee.  **ON BRIEF:** Graham K. Crabtree, Anita G. Fox, FRASER, TREBILCOCK, DAVIS & DUNLAP, P.C., Lansing, Michigan, for Appellant.  Clyde M. Metzger, Judith A. Sherman, FOLEY, BARON & METZGER, PLLC, Livonia, Michigan, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge.  Plaintiff Kevin Miller ("Miller") seeks review of the Rule 12(b)(2) dismissal of his lawsuit for lack of personal jurisdiction over Defendant AXA Winterthur Insurance Company ("Winterthur").  The district court ruled that Miller had

_____

[*]The Honorable Stephen Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

established a basis for personal jurisdiction under Michigan's long-arm statute, but that the requirements of constitutional due process were not met. Miller disagrees, claiming that a document sent from Winterthur to Miller on October 3, 2005, demonstrates that Winterthur purposefully availed itself of Michigan law. Winterthur agrees with the district court's ultimate disposition, but disagrees that it is subject to jurisdiction under the Michigan long-arm statute. For the following reasons, we affirm.

I.

In 2000 an "incident" occurred on the ice of a professional hockey game in Switzerland between Miller and Andrew McKim that resulted in McKim being injured. Swiss courts filed criminal charges against Miller for causing the injury. Allianz Insurance Company ("Allianz") and ZLE Betriebs AG ("ZLE"), McKim's insurance provider and hockey club, respectively, filed suit against Miller, and two separate civil judgments were entered against Miller. A direct claim was also made against Miller by McKim for his injuries. Miller left Switzerland sometime before these judgments were finalized and informed his hockey team and Winterthur (the insurance provider of his hockey club) that he no longer had the financial means to defend the litigation.

In 2005, a document ("Agreement") was submitted to Miller in Michigan from Winterthur that notes Winterthur's responsibility for the costs of criminal and civil judgments and proceedings pending with the Zurich District Court and previous attorneys' fees:

> It is hereby formally confirmed that Winterthur is responsible for the financial consequences of all judgments and costs arising out of
>      a) the criminal proceedings and
>      b) any civil proceedings relating to Mr. Andrew McKim's direct claim against Mr. Kevin Miller based on the accident of 31st October 2000.

> Winterthur is also responsible for the future costs of the civil proceedings pending with the Zurich District Court and brought by ZLE Betriebs AG and Allianz Suisse Insurance.

Winterthur shall cover previous attorneys' fees in the amount of c. CHF 37,000 (Attorney Schober) and CHF 29,267 (Attorney Dr. Peter).

This confirmation includes Winterthur's responsibility for costs arising for Mr. Kevin Miller if he must pursue collection of amounts owed by Winterthur (such as, e.g., attorneys' fees or travel costs).

Between April and December 2010, Allianz and ZLE submitted their demands for payment to Miller from the Swiss judgment. Miller, claiming reliance on the Agreement, presented these demands to Winterthur, which declined to pay the judgments in full. Miller brought this suit in Michigan circuit court seeking various contractual damages and enforcement of the terms of the Agreement. Winterthur removed the action to federal court based on diversity of citizenship, and filed a motion to dismiss under Rules 12(b)(2) and 12(b)(6) and, in the alternative, motions to dismiss for *forum non conveniens* and because the action was not ripe. The district court granted Winterthur's motion to dismiss for lack of personal jurisdiction and declined to consider the other motions.

## II.

We review personal jurisdiction determinations *de novo. Kroger Co. v. Malease Foods Corp.,* 437 F.3d 506, 510 (6th Cir. 2006); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 664 (6th Cir. 2005). "In diversity cases, federal courts apply the law of the forum state to determine whether personal jurisdiction exists." *Nationwide Mut. Ins. Co. v. Tryg Int'l. Ins. Co.,* 91 F.3d 790, 793 (6th Cir. 1996) (citation omitted). In response to a motion to dismiss, the plaintiff may not stand on his pleadings, but must show the specific facts demonstrating that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In order to defeat the motion to dismiss the plaintiff's affidavit(s) must make only a *prima facie* showing. *Id.* The pleadings and affidavits are viewed in the light most favorable to the plaintiff. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

Personal jurisdiction may be found either generally or specifically. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549-50 (6th Cir. 2007). General

jurisdiction depends on continuous and systematic contact with the forum state, so that the courts may exercise jurisdiction over any claims a plaintiff may bring against the defendant. *Kerry Steel*, 106 F.3d at 149. Specific jurisdiction, on the other hand, grants jurisdiction only to the extent that a claim arises out of or relates to a defendant's contacts in the forum state. *Id.*

Miller has alleged only specific jurisdiction in his brief, and since Miller has not shown that Winterthur has carried on systematic conduct, has consented to jurisdiction, or is incorporated under the law of Michigan, courts may not exercise general personal jurisdiction over Winterthur in Michigan. "[C]ontact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2788 (2011) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process.[1] *Air Prods.*, 503 F.3d at 550; *see Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 319-20 (1945). It is not necessary to decide if due process has been satisfied if the requirements of the long-arm statute are not met. *Green v. Wilson*, 565 N.W.2d 813, 816-17 (Mich. 1997).

A. Michigan's Long-Arm Statute

The district court found that Michigan's long-arm statute was satisfied because it allows personal jurisdiction over a corporation that is involved in "the transaction of any business in the state."[2] Mich. Comp. Laws § 600.715(1); *see Sifers v. Horen*, 188 N.W.2d 623, 624 n.2 (Mich. 1971) (explaining that "[t]he word 'any' means just

---

[1]Generally, long-arm statutes that confer jurisdiction to the extent of due process only require a one-step consideration of due process. *Green v. Wilson*, 565 N.W.2d 813, 816 (Mich. 1997). Some Michigan courts have interpreted Michigan's long-arm statute to be coextensive with due process in certain respects, but we still must consider both factors since the language of the statute enumerates specific instances where jurisdiction may be exercised. *Id.*

[2]Later in the opinion, however, the district court said that the long-arm statute was only "likely" satisfied. It appears from the opinion that the district court did, in fact, find personal jurisdiction under Michigan Compiled Laws § 600.715(1).

what it says. It includes 'each' and 'every.'"). Furthermore, the "slightest act of business in Michigan" is a sufficient business transaction for purposes of the statute. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002); *see Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001).

Although no financial transaction occurred, we assume, without deciding, that the district court was correct in holding that the letter sent from Winterthur to Miller was a nominal business transaction that satisfied the Michigan long-arm statute.

B. Constitutional Due Process

Assuming arguendo that the Agreement satisfied Michigan's long-arm statute as held by the district court, the subsequent due process requirement of personal jurisdiction has not been met. For specific jurisdiction to exist, the defendant must have certain minimum contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see Int'l Shoe*, 326 U.S. at 316. We have articulated a three-part test for recognizing due process in personal jurisdiction cases:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). If any of the three requirements is not met, personal jurisdiction may not be invoked. *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989).

1. Purposefully Avail

Any contacts Winterthur may have had with Michigan were so attenuated that they could not demonstrate purposeful availment of the forum state. Our decision is consistent with case law. In *Nationwide Mut. Ins. Co.*, 91 F.3d at 795-96, we found that due process was not satisfied even though Tryg sent a letter to Nationwide's corporate headquarters in Ohio, entered into an agreement with Nationwide, sent an agent to Ohio,

solicited business from Nationwide in Ohio, and realized profits from its contacts with Ohio. Winterthur sent a letter to Miller in Michigan and reached an agreement with Miller while both parties were in Switzerland, but no more.

In *LAK*, we held that due process was not satisfied when a Michigan corporation sued an Indiana partnership over a property contract. *See LAK*, 885 F.2d at 1303. The plaintiff's attorneys exchanged repeated phone calls and drafts of the agreement with the defendant in Indiana. The mere fact that the defendant in Indiana utilized the mail to send documents to Michigan did not constitute purposeful availment, and the contract between the parties did not qualify as an ongoing business relationship. *Id.* at 1301. Similarly, the Agreement was communicated between Winterthur's attorneys in Switzerland and Miller's attorneys in Michigan. Even though this communication was intentionally directed to Michigan, it fails to demonstrate that Winterthur purposefully availed itself of Michigan law.

In *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722-24 (6th Cir. 2000), we held that a contract was not sufficient to satisfy due process when none of the terms of the contract was to be performed in the forum state; the fact that a contract existed between the parties but in no way implicated action in the forum state was merely fortuitous. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Here, the district court has already determined that the Agreement exchanged between the parties created no contractual obligations, and even if it did, they were not to be performed in Michigan. The Agreement simply stated several financial obligations from Miller's preexisting insurance policy *in Switzerland* concerning litigation *in Switzerland*. These obligations existed regardless of where Miller resided, and thus the fact that he was in Michigan when he received the document was merely coincidental.

2. Arising From

The district court found that Miller has established that his cause of action does arise from Winterthur's contacts with Michigan. Although the contact in question, the Agreement, was not sufficient to purposefully avail Winterthur of Michigan law, it is the direct source of Miller's cause of action. Therefore, Miller has demonstrated that his cause of action is "related to" or "connected with" Winterthur's contact with the forum state.

3. Reasonableness

The district court found that Miller has not demonstrated that it is reasonable to exercise personal jurisdiction over Winterthur. The burden on Winterthur would be heavy, as it has no presence in Michigan, and it would be forced to litigate a contract case created under Swiss law in the United States court system. All of the events underlying the Agreement, insurance policy, and hockey injury occurred in Switzerland, and all of the evidence and witnesses are there as well. Moreover, the insurance policy that exists between the parties includes a Swiss forum selection clause and a Swiss choice of law provision. Accordingly, if we granted jurisdiction here it is very possible that the case would ultimately be transferred to Switzerland under these contractual terms. Finally, all of the relevant trial materials would have to be translated from German to English. It would therefore be more efficient to litigate the case in Switzerland.

The district court points out that Miller would be burdened by traveling to Switzerland, but this is not the same as saying that he could not find relief there. Moreover, it appears from the Agreement that travel is a covered cost of his insurance policy. The district court also notes that Michigan has only a token interest in the

disposition of this lawsuit.[3]  The weight of these factors demonstrates that it is not reasonable for Winterthur to defend this case in Michigan.

III.

For the foregoing reasons, we agree with the district court that Winterthur is not subject to specific personal jurisdiction in Michigan.

AFFIRMED.

---

[3]However, some case law suggests that states do have a high interest in protecting their citizens' rights under insurance policies.  *See Hanson v. Denckla*, 357 U.S. 235, 252 (1958) (affirming that a state has an increased interest in providing redress against out-of-state defendants in activities "that the State treats as exceptional and subjects to special regulation," such as insurance.); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) (a state "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims").