NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0382n.06

No. 14-3807

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MAXITRATE TRATAMENTO TERMICO E CONTROLES, ET AL., a foreign corporation, | ) ) ) | **FILED** |
| Plaintiff, | ) ) | May 28, 2015 DEBORAH S. HUNT, Clerk |
| JEREMY LEE HEDMAN, | ) ) | |
| Third Party Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| SUPER SYSTEMS, INC., ET AL., an Ohio corporation, | ) ) ) | COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant, | ) ) | |
| ALLIANZ SEGUROS S.A., fka AGF Brasil Seguros S.A., | ) ) ) | |
| Third Party Defendant-Appellee. | ) ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; HELMICK, District Judge.[*]

KETHLEDGE, Circuit Judge. Jeremy Hedman traveled from Ohio to Brazil, where he was seriously injured in an explosion at a factory owned by a Brazilian company, Maxitrate Tratamento Termico e Controles. After he returned to the United States, Hedman filed a third-party complaint in the Southern District of Ohio against Maxitrate's Brazilian insurer, Allianz Seguros. Seguros is affiliated with Allianz, a global insurer, but Seguros itself is an independent

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

entity that is incorporated in Brazil, with headquarters in Brazil, and sells all of its insurance policies there. For those reasons, the district court held that it lacked personal jurisdiction over Seguros and dismissed the complaint. We affirm.

## I.

Maxitrate is a Brazilian company that makes heat-treated metal products. Maxitrate purchases control panels for its industrial furnaces from Super Systems, Inc., an Ohio company. Hedman, an Ohio citizen, worked for Super Systems. In 2008, Super Systems sent Hedman to São Paulo to work on a furnace at Maxitrate's factory. While Hedman was working on the furnace, pressurized gas escaped and caused a large explosion that killed two Maxitrate employees, injured two others, and seriously injured Hedman.

Maxitrate sued Super Systems and Hedman in the Southern District of Ohio, alleging that Super System's products were defective and that Hedman had been negligent. Hedman filed a counterclaim against Maxitrate, alleging that Maxitrate's negligence caused the explosion, and that Maxitrate was therefore liable for his injuries. Maxitrate notified its insurer, Seguros, that Hedman had filed the counterclaim. Seguros responded that Maxitrate's policy did not provide coverage for the claim, and declined to defend Maxitrate. Maxitrate and Hedman ultimately settled the counterclaim; in the settlement, Maxitrate accepted liability for Hedman's injuries, and assigned to Hedman its claims against Seguros. Pursuant to that agreement, the district court ordered Maxitrate to pay Hedman $12,861,978.77 in damages.

After the settlement, Hedman filed a third-party complaint against Seguros, alleging that Seguros breached its contract with Maxitrate in bad faith when it denied that Maxitrate's policy covered Hedman's counterclaim. Seguros moved to dismiss the complaint for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The district court granted the motion and dismissed the case. This appeal followed.

## II.

We review de novo a district court's dismissal for lack of personal jurisdiction. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012). A plaintiff bears the burden of establishing that a court has jurisdiction over a defendant. Where, as here, the district court resolves a Rule 12(b)(2) motion without an evidentiary hearing or discovery, the plaintiff need only make a prima-facie showing that jurisdiction exists. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).

In a diversity case, whether a federal district court in Ohio has personal jurisdiction over a defendant depends on whether an Ohio state court would have jurisdiction. *See* Fed. R. Civ. P. 4(k)(1); *Miller*, 694 F.3d at 678. An Ohio state court would have jurisdiction if state law provides for it and if the court's exercise of jurisdiction satisfies the Due Process Clause. *Id.* at 679. Here, Seguros concedes that jurisdiction would be proper under Ohio law. Thus, we need decide only whether the Due Process Clause allows an Ohio court to exercise jurisdiction over Seguros.

The Due Process Clause allows for two kinds of personal jurisdiction: general and specific. General jurisdiction allows a plaintiff to sue a defendant "on any and all claims," regardless of the connection (or lack thereof) between the claim and the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Here, Hedman concedes that Seguros is not subject to general jurisdiction in Ohio. Specific jurisdiction, on the other hand, allows a plaintiff to sue a defendant only on claims that arise out of the defendant's activities in the forum state. *Id.* For a defendant to be subject to specific jurisdiction in a state, the defendant must have "minimum

contacts" with the state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden v. Fiore*, 134 S. Ct. 1115, 1121-22 (2014) (internal quotation marks and alterations omitted). To satisfy this standard, a plaintiff must show, among other things, that the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state[.]" *Miller*, 694 F.3d at 680 (internal quotation marks omitted).

Here, Hedman must show that Seguros—a Brazilian company that sells insurance only in Brazil—intentionally did something in Ohio that would allow an Ohio court to exercise jurisdiction over Seguros. Hedman argues that Seguros purposefully acted in Ohio in several ways.

Hedman principally contends that Seguros's refusal to defend Maxitrate counts as purposeful activity in Ohio, citing *Calder v. Jones*, 465 U.S. 783 (1984), in support. There, the Court held that tabloid journalists in Florida were properly sued for libel in California, where the plaintiff lived. The tabloid had sold over 600,000 copies in California, and the defendants knew that "the brunt of [the plaintiff's] injury would be felt" there. *Id.* at 785, 789-90. Hedman relies on language in *Calder* suggesting that, if a defendant knows that its intentional acts will cause effects in a state, then that state can exercise jurisdiction over the defendant. *See id.* at 789-90. But the Supreme Court rejected that theory of personal jurisdiction (and that interpretation of *Calder*) last year in *Walden*. 134 S. Ct. at 1123-26. There, the Court held that Nevada could not exercise jurisdiction over a defendant from Georgia based merely on the defendant's knowledge that his false affidavit would cause harm to two plaintiffs in Nevada. *Id.* at 1125-26. To hold otherwise, the Court held, would "improperly attribute[] a plaintiff's forum connections to the defendant and mak[e] those connections decisive in the jurisdictional analysis." *Id.* at 1125

(quotation marks omitted). Thus, the Court held, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 1126.

Here, Seguros did not create any contacts with Ohio. To the contrary, to the extent that Seguros's decision not to defend Maxitrate (a Brazilian company) with respect to an accident in Brazil had effects in Ohio, those effects were the result of Hedman's and Maxitrate's decisions to litigate there. Indeed, Seguros's decision to deny coverage was an affirmative decision *not* to go to Ohio. And a foreign defendant does not subject itself to personal jurisdiction in a state simply by refusing to litigate there.

Next, Hedman points to Seguros's decision to sell an insurance policy to Maxitrate, a company that does considerable business in Ohio. According to Hedman, Seguros should have known that the policy might require Seguros to defend Maxitrate there. But the policy's "Geographical Scope" provision limits coverage to "property, liabilities, or persons situated on Brazilian territory[.]" And the policy says that "[t]he competent jurisdiction to resolve litigation in relation to this contract shall be that of the domicile of the insured"—here, Brazil. Seguros's decision to insure property in Brazil, therefore, is not purposeful activity in Ohio. *See Miller*, 694 F.3d at 680.

Hedman responds that our decision in *Payne v. Motorists' Mutual Insurance Cos.*, 4 F.3d 452 (6th Cir. 1993), dictates otherwise. There, a moving van insured by Motorists was involved in an accident in Tennessee. *Id.* at 455-57. Motorists' insurance policy expressly provided for coverage anywhere in the United States or Canada. *See id.* at 454, 456. When the car went to Tennessee, therefore, Motorists' coverage went with it—not as a result of the driver's unilateral actions, but of the company's purposeful decision to extend coverage nationwide. Here, in

contrast, the policy covers risks only in Brazil. Moreover, in *Payne* the accident occurred in the forum state, whereas here the accident occurred a continent away. *Id.* at 454.

Hedman contends that Ohio law creates two other contacts between Seguros and Ohio. First, Hedman says that, under Ohio law, a breach of contract occurs in the jurisdiction where performance was due. Seguros's performance was allegedly due in Ohio, where Maxitrate was litigating the dispute over the cause of the explosion. But this argument just adds a state-law veneer to Hedman's contention that jurisdiction is proper because Ohio was where Maxitrate felt the effects of Seguros's decision to deny coverage. As shown above, *Walden* forecloses that theory of personal jurisdiction as a matter of federal constitutional law, regardless of what Ohio law says. Second, Hedman asserts that Ohio Rev. Code § 3929.06 provides a direct cause of action for a plaintiff against a defendant's insurance company. But that putative cause of action does not amount to purposeful availment by Seguros of anything in Ohio; and a state-law cause of action otherwise does not trump the Due Process Clause.

In sum, Seguros is a Brazilian insurance company that contracted with another Brazilian company to insure property and persons situated in Brazil. Seguros has availed itself of nothing in Ohio, and thus is not subject to suit there.

\* \* \*

The district court's judgment is affirmed.

6