# Illinois Official Reports

## Appellate Court

---

### *Pluciennik v. Vandenberg*, 2018 IL App (3d) 160726

---

| | |
|---|---|
| Appellate Court Caption | JOHN PLUCIENNIK and DAN RIPPEL, Plaintiffs-Appellants, v. MARK VANDENBERG; DAVID ANDERS; JOHN ATKENSON; MCV VENTURES, LLC; 600 TERRITORIAL, LLC; MOKENA CROSSINGS I, LLC; UNIVERSITY CROSSINGS NORTH, LLC; ALLEGIANCE 3, LLC; DRENTE, LLC; and FLEVOLAND, LLC, Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-16-0726 |
| Filed | June 20, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 16-CH-778; the Hon. John C. Anderson, Judge, presiding. |
| Judgment | Affirmed in part; reversed and remanded in part. |
| Counsel on Appeal | Robert J. Leoni, of Orland Hills, for appellants.<br><br>Lynn M. Hickey, of Hutchison, Anders & Hickey, of Tinley Park, for appellee David Anders.<br><br>Jason M. Metnick, of Meltzer, Purtill & Stelle, of Chicago, for other appellees. |

JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justices O'Brien and Wright concurred in the judgment and opinion.


**OPINION**


¶ 1        Plaintiffs, John Pluciennik and Dan Rippel, appeal from the trial court's dismissal of their complaint against defendants Mark Vandenberg; David Anders; John Atkenson; MCV Ventures, LLC; 600 Territorial, LLC; Mokena Crossings I, LLC; University Crossings North, LLC; Allegiance 3, LLC; Drente, LLC; and Flevoland, LLC, seeking to avoid the transfer of real estate from companies owned and managed by defendant Vandenberg to companies held in trust for the benefit of his minor daughters. We affirm in part and reverse and remand in part.


¶ 2                                    BACKGROUND

¶ 3        MCV Ventures, LLC (MCV Ventures), is a commercial development company that owns several parcels of real estate in the greater Chicago area. The company is owned and managed by Mark Vandenberg. Plaintiffs are judgment creditors of MCV Ventures. On November 30, 2011, judgment was entered in favor of Pluciennik for $4,587,968 and in favor of Rippel for $764,661.

¶ 4        Prior to the judgment in 2011, MCV Ventures held ownership interests in several limited liability companies, including three companies that are named defendants in this case: 600 Territorial, LLC (600 Territorial); Mokena Crossings I, LLC (Mokena Crossings); and University Crossings, North, LLC (University Crossings). MCV Ventures owned 100% interest in 600 Territorial and University Crossings and 51% interest in Mokena Crossings. The sole assets of those companies were three parcels of real estate: (1) 600 Territorial owned 594 Territorial Drive in Bolingbrook, (2) Mokena Crossings owned lots 9830-9851 on West 191st Street in Mokena, and (3) University Crossings held title to 300 Central in University Park.

¶ 5        In May 2006, 600 Territorial granted Cole Taylor Bank a construction mortgage on the real estate located at 594 Territorial Drive. The mortgage was granted to secure debt due under a promissory note dated May 18, 2006, pursuant to which the bank loaned 600 Territorial $13.5 million. On November 8, 2011, 600 Territorial sold 594 Territorial Drive to Flevoland, LLC (Flevoland), a company held in trust by the Carly C. Vandenberg and Kayla M. Vandenberg Trust. In a release letter dated May 2, 2012, the bank directed that the net sales proceeds from the sale of the property were to be paid to the bank in exchange for a release of the bank's security interest in the real estate. The letter stated that the greater of $5 million or the net sales proceeds would be paid to the bank. The closing date of the sale did not occur until May 16, 2012. The property sold for less than the debt owed to Cole Taylor Bank. The escrow trust disbursement agreement for the sale of the Territorial Driver property states that the bank was paid $4,775,335.95 and the seller was paid $0.

¶ 6        In May 2007, Mokena Crossing granted Cole Taylor Bank a construction mortgage on the real estate located on West 190th Street in Mokena. The mortgage was granted to secure debt due under a promissory note dated May 1, 2007, pursuant to which the bank loaned Mokena Crossings $4.36 million, and to secure additional debt owed on a renewal note under which the bank loaned Mokena Crossings an additional $9.32 million. On November 10, 2011, Mokena

Crossings sold the Mokena property to Drente, LLC (Drente), a company held in trust by the Carly C. Vandenberg and Kayla M. Vandenberg Trust. In a release letter dated May 2, 2012, the bank directed that the net sales proceeds from the sale of the property were to be paid to the bank in exchange for a release of the bank's security interest in the real estate. The letter stated that the greater of $7.4 million or the net sales proceeds would be paid to the bank. The closing date of the sale did not occur until May 16, 2012. The property sold for less than the debt owed to Cole Taylor Bank. The escrow trust disbursement agreement for the sale of the Mokena property states that the bank was paid $7,213,313.49 and the seller was paid $0.

¶ 7    In June 2008, University Crossings granted Allegiance Community Bank a construction mortgage on the real estate located at 300 Central in University Park. The mortgage was granted to secure debt due under a promissory note dated June 18, 2008, pursuant to which the bank loaned Lockport 199 LLC, University Crossings' partner company, $1.32 million. On October 28, 2011, the mortgage and the note were part of a package assigned to a third lender, Allegiance 3, LLC (Allegiance 3), a company held in trust by the Carly C. Vandenberg and Kayla M. Vandenberg Trust. On the date of assignment, the bank certified that $1,548,835.53 was owed on the loan, the promissory note, and the mortgage on the University Park property.[1]

¶ 8    Allegiance 3 agreed to sell a portion of the University Park property to satisfy Lockport 199's loan obligations. On March 30, 2012, the sale of a portion of the property yielded $1.35 million, payable to Allegiance 3. After the sale, the debt remained unsatisfied. In its settlement of the debt, Allegiance 3 agreed that, in lieu of foreclosure, University Crossings could convey the remaining portion of the unsold property to Allegiance 3. As a result, on June 25, 2012, the remainder of the University Park property was transferred from University Crossings to Allegiance 3 by special warranty deed.

¶ 9    In April 2016, plaintiffs filed suit against Vandenberg, MCV Ventures, and the limited liability companies, seeking to avoid the transfers of all three parcels of real estate—600 Territorial, Mokena Crossings, and University Crossings—under the Uniform Fraudulent Transfer Act (Act) (740 ILCS 160/1 *et seq.* (West 2016)).[2] Plaintiffs also named as individual defendants David Anders, the manager of Flevoland, Drente, and Allegiance 3, and John Atkenson, Vandenberg's employee and financial officer.

¶ 10    In the complaint, plaintiffs alleged that Vandenberg, as owner and manager of MCV Ventures, fraudulently transferred the properties owned by 600 Territorial, Mokena Crossings, and University Crossings to Flevoland, Drente, and Allegiance 3, which were companies held in irrevocable trusts for the benefit of Carly and Kayla Vandenberg, Vandenberg's minor daughters. In counts I, II, and III of the complaint, plaintiffs claimed that the transfers were invalid under the Act because the trusts were established for the benefit of Vandenberg's daughters and the transfers were made with the actual intent to hinder, delay, or defraud plaintiffs from collecting their judgments against MCV Ventures. Count IV of the complaint included a claim for civil conspiracy against Vandenberg and Anders.

---

[1]The mortgage granted from University Crossings to the bank and the promissory note between its partner company, Lockport 199, and the bank were part of a package of credit facilities assigned to a third lender, Allegiance 3, that involved a nonrevolving line of credit loan agreement, an environmental indemnity agreement, an assignment of leases and rents, and a junior credit mortgage.

[2]Plaintiffs have already been awarded judgment in a prior lawsuit against 19 other properties in which MCV Ventures held an ownership interest.

¶ 11 Defendants Vandenberg and Atkenson moved to dismiss counts I, II, and III under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2016)), arguing that the properties did not constitute "assets" as defined in the Act because they were fully encumbered by valid liens at the time of transfer. Attached to their section 2-619 motion, defendants included payoff letters, disbursement statements, and an affidavit signed by Atkenson stating that the debts secured by the mortgages on all three parcels exceeded the values of the properties. Anders filed a separate motion, seeking to dismiss the civil conspiracy count against him based on section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)). The trial court granted both motions with prejudice.

¶ 12                                                ANALYSIS

¶ 13 Plaintiffs contend that the trial court erred in dismissing their complaint under section 2-619 because defendants failed to show that no set of facts would entitle plaintiffs to the relief they requested. Specifically, plaintiffs maintain that, although the properties were encumbered by a valid lien, the transfers were fraudulent under the Act because Vandenberg sold them to "insiders" far below fair market value.

¶ 14 The purpose of a motion to dismiss pursuant to section 2-619 of the Code is to provide litigants with the means to dispose of issues of law and easily proven issues of fact. *Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). The proponent of a section 2-619 motion admits the legal sufficiency of the factual allegations contained in the complaint but asserts that the complaint is barred by an affirmative matter that defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2016); *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115 (1993). We review the trial court's dismissal of a complaint pursuant to section 2-619 *de novo*. *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 115 (2008).

¶ 15 The Act provides relief to creditors against the fraudulent transfer of assets by debtors. It is intended to prevent debtors from defrauding their creditors by moving assets out of reach. See 740 ILCS 160/1 *et seq.* (West 2016). When certain conditions are met, the Act treats a transfer by an insolvent debtor as fraudulent and therefore invalid. *Id.* § 5. The Act defines a transfer as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." *Id.* § 2(*l*). The Act also defines an asset as "property of a debtor, but the term does not include: (1) property to the extent it is encumbered by a valid lien." *Id.* § 2(b)(1). A valid lien is defined as "a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." *Id.* § 2(m).

¶ 16 Pursuant to section 5 of the Act, a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer "with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* § 5(a)(1). In determining actual intent, consideration must be given to several factors, including whether "the transfer or obligation was to an insider." *Id.* § 5(b)(1). A relative of the debtor is defined as an insider under the Act. *Id.* § 2(g)(1)(A).

¶ 17 The Act limits its application to the fraudulent transfer of "an asset" or "an interest in an asset." *Id.* § 2(*l*). If the term "asset" does not apply to the property that has been conveyed, there is no transfer. See *id.* Thus, the threshold question is whether the properties constituted "an asset" within the meaning of the Act.

¶ 18 The primary rule of statutory construction is to determine the intent of the legislature by examining its plain language, which is the most reliable indicator of the legislative objectives

of the law. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). The Act defines an asset as property of a debtor, except "to the extent it is encumbered by a valid lien." 740 ILCS 160/2(b)(1) (West 2016). Under the plain meaning of that language, the value of the property in excess of a valid lien encumbering the property is an asset. See *Webster Industries, Inc. v. Northwood Doors, Inc.*, 320 F. Supp. 2d 821, 837 (N.D. Iowa 2004) (citing several cases from other jurisdictions providing similar interpretation of the Uniform Fraudulent Transfer Act); *Citizens National Bank of Texas v. NXS Construction, Inc.*, 387 S.W.3d 74, 82-83 (Tex. App. 2012) (same). If an asset is fully encumbered, the transfer may not be attacked under the Act. If, on the other hand, the transfer involves an asset unencumbered by a valid lien in whole or in part, a creditor may seek relief from the transfer by demonstrating that it was made with actual intent to hinder, delay, or defraud under section 5(b). In this case, all three properties were encumbered by mortgages, which are valid liens under the Act. See 740 ILCS 160/2(m) (West 2016).

¶ 19 On appeal, plaintiffs acknowledge that the properties were encumbered by valid liens. However, they argue that the trial court erred in determining, as a matter of law, that the properties were not assets because they were *fully* encumbered, without evidence of the fair market value of the parcels. We agree.

¶ 20 In their motion to dismiss, defendants alleged that the properties were not "assets" as defined in the Act because all three parcels were encumbered by mortgages that exceeded the value of the real estate. The question before the trial court was to what extent the properties were encumbered by a valid lien. See *id.* § 2(b)(1) (any unencumbered portion is considered "an asset"). The record included (1) an affidavit signed by Atkenson, stating that the real estate was worth less than the loans, (2) escrow trust disbursement statements, indicating that the entire sale proceeds were used to satisfy the secured interests of the lenders, and (3) loan payoff letters from the banks, stating that the lenders were to receive 100% of the sales proceeds in satisfaction of the loans. All of these documents state that the real estate was sold for an amount less than the amount owed to the banks and that all of the proceeds were used to pay off the loans. However, none of them establish the fair market value of the property. Defendants claim that plaintiffs did not offer completed appraisals. But, in light of defendants' self-serving documentation, there continues to be a material issue of fact as to the reasonable value of the properties and whether, in light of the fair market value, the properties were *fully* encumbered.

¶ 21 We note that the issue of whether encumbered properties qualify as an asset under the Act appears to be a matter of first impression in Illinois. Our supreme court has held that since the general purpose of a uniform act is to make consistent the laws of the states that have enacted it, judicial opinions from other jurisdictions interpreting uniform acts are given greater deference than usual. *Garver v. Ferguson*, 76 Ill. 2d 1, 8 (1979); see also *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 497 (2002). Our interpretation today—that the fair market value of encumbered property that exceeds the value of a valid lien qualifies as an asset under Illinois's Uniform Fraudulent Transfer Act—is consistent with other jurisdictions. In *Webster Industries, Inc.*, 320 F. Supp. 2d at 837, the court held that the value of property in excess of a valid lien encumbering the property is an asset under the Act. Similarly, in *Citizens National Bank of Texas*, 387 S.W.3d at 82-83, the court found that the uniform act did not intend to allow debtors to avoid creditors by transferring property encumbered by a lien worth a fraction of the property's value. Other courts have reached the same conclusion. See *Oregon Account*

*Systems, Inc. v. Greer*, 996 P.2d 1025, 1029 (Or. Ct. App. 2000) (equity in excess of the amount of the encumbering lien is an asset under the Uniform Fraudulent Transfer Act); *Mussetter v. Lyke*, 10 F. Supp. 2d 944, 958-59 (N.D. Ill. 1998) (uniform case law confirms the obvious proposition that the unencumbered portion of a debtor's property is an asset for purposes of the Uniform Fraudulent Transfer Act). We therefore remand the case for further proceedings to determine the fair market value of the real estate and an appropriate calculation of the value of the transfer in excess of the mortgages that encumbered the properties.

¶ 22    Although we reverse and remand counts I, II, and III, we affirm the dismissal of defendant Anders pursuant to section 2-615 of the Code. Plaintiffs only asserted one count against Anders—count IV, alleging civil conspiracy. Conspiracy is not a separate and distinct tort in Illinois. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 63 (1994). Because plaintiffs failed to allege a separate cause of action against Anders underlying the allegations of conspiracy in count IV, the trial court properly granted his section 2-615 motion to dismiss. See 735 ILCS 5/2-615 (West 2016); see also *Green v. Rogers*, 234 Ill. 2d 478, 498-99 (2009) (trial court properly granted defendant's section 2-615 motion to dismiss where complaint did not plead cause of action with precision and particularity).

¶ 23                                          CONCLUSION

¶ 24    The dismissal of defendant Anders is affirmed. The order of the circuit court dismissing counts I, II, and III is reversed, and the cause is remanded for further proceedings.

¶ 25    Affirmed in part; reversed and remanded in part.