**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190691

Order filed November 9, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| NATIONAL ALLIANCE OF WOUND CARE, INC., a not-for-profit corporation, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0691 Circuit No. 18-L-317 |
| NANCY MORGAN, DONNA SARDINA, WOUND CARE EDUCATION INSTITUTE, INC., and WILD ON WOUNDS PRODUCTIONS, INC., | ) ) ) ) ) | The Honorable Raymond E. Rossi, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the judgment of the court.
Justices Schmidt and Wright concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   Trial court erred in dismissing plaintiff's fraud claim against director and corporation where plaintiff alleged that director created and delivered invoices to plaintiff on behalf of corporation for services corporation did not perform, and plaintiff paid invoices believing they reflected legitimate charges. Trial court properly dismissed all other counts.

¶ 2     Plaintiff, National Alliance for Wound Care, Inc. (NAWCO), filed a 16-count amended

complaint against defendant corporations, Wound Care Education Institute, Inc. (WCEI) and Wild

on Wounds Productions, Inc. (WOW), and their officers, Nancy Morgan and Donna Sardina, alleging common law fraud, breach of fiduciary duty, conversion, consumer fraud, conspiracy and breach of contract. Defendants filed a motion to dismiss, which the trial court granted, dismissing all counts of plaintiff's complaint. Plaintiff appeals, arguing that the trial court erred in dismissing many of its claims. We reverse the trial court's dismissal of plaintiff's common law fraud claims against Morgan and WCEI, affirm the court's dismissal of the remaining counts of plaintiff's complaint, and remand for further proceedings.

¶ 3                                BACKGROUND

¶ 4        Plaintiff NAWCO is a Wisconsin non-profit corporation that was incorporated in 2002 by defendants Nancy Morgan and Donna Sardina. At its inception, Morgan and Sardina were the sole members of NAWCO's board of directors, and Sardina was its registered agent. The purpose of NAWCO is to provide "[e]ducation and credentials for medical personnel in wound injuries." NAWCO developed national examinations and certifications in wound care and related medical fields.

¶ 5        Soon after incorporating NAWCO, Morgan and Sardina incorporated a for-profit Wisconsin corporation, Wound Care Education Institute, Inc. (WCEI). Morgan and Sardina were the sole owners and operators of WCEI. WCEI is in the business of providing training and education to medical professionals regarding skin, wound and ostomy care and management. WCEI provides courses to assist healthcare workers in preparing for the national certification exams developed by NAWCO.

¶ 6        Morgan also incorporated an Illinois for-profit corporation, Wild about Wounds (WOW). Morgan is the president and registered agent of WOW. WOW is owned and operated by Morgan

2

and Sardina. WOW provides a national conference and trade show for health care professionals in the wound care field.

¶ 7 In 2010, Morgan hired a bookkeeper, Karen Salutric, for NAWCO. Salutric has worked in that position continuously since 2010. Morgan and Sardina were not on NAWCO's board of directors as of 2016 or anytime thereafter.

¶ 8 In April 2016, Morgan sent an invoice to NAWCO on behalf of WCEI for meeting room rentals from January 2012 to April 2016, totaling $243,500. NAWCO paid that invoice upon receipt. In September 2017, Morgan sent NAWCO an invoice on behalf of WCEI for meeting room rentals from April 2016 to December 2017 for a total of $104,000. NAWCO paid the invoice upon receipt. In October 2017, Morgan sent an invoice to NAWCO on behalf of WCEI for "Application processing 2002-2006" totaling $300,000. NAWCO paid that invoice upon receipt. Finally, in November 2017, Morgan sent NAWCO, on behalf of WCEI, an invoice for "Application processing 1/1/2007-12/31/2011" in the amount of $350,000. Upon receipt, NAWCO paid the invoice.

¶ 9 In April 2018, NAWCO filed an 18-count complaint against defendants WCEI, WOW, Morgan and Sardina. The complaint alleged fraud, negligence, conversion, and breach of fiduciary duty. Defendant Morgan filed a motion to strike the complaint, which the other defendants joined. The trial court granted the motion, dismissing the complaint without prejudice.

¶ 10 In November 2018, NAWCO filed a 16-count first amended complaint, alleging common-law fraud against Morgan (count 1), WCEI (count 10), and WOW (count 12); breach of fiduciary duty against Morgan (counts 2 and 3) and Sardina (count 7); consumer fraud against Morgan (count 4), WCEI (count 11), and WOW (count 13); conversion against Morgan (count 5);

3

conspiracy against Sardina (counts 6, 8 and 9), and breach of contract against WCEI (counts 14-16).

¶ 11　　In count 1, NAWCO alleged that the invoices Morgan submitted on behalf of WCEI in April 2016, September 2017, October 2017, and November 2017, to NAWCO, which were attached to the complaint as Exhibits A through D, were fraudulent because they contained charges for work never performed by WCEI and/or work for which NAWCO had already paid WCEI. NAWCO alleged:

"All of the above invoices, attached as Exhibits A-D, constitute false statements of material fact upon which Plaintiff relied. Morgan knew the sums detailed on Exhibits A-D were not due and owing to WCEI, but created them anyway with knowledge of their falsity. This was done with the intent that NAWCO would rely on these invoices and *** pay these sums over to Morgan's control. NAWCO indeed relied on these invoices, paid them, and incurred damages as a direct and proximate result."

NAWCO also alleged that WOW submitted charges totaling $583,744.34 to NAWCO from 2006 to 2015, for expenses that "that have no basis and/or supporting documentation." NAWCO alleged that those charges were "not legitimate" because of "the utter lack of supporting documentation for these significant charges."

¶ 12　　In counts 2 and 3, NAWCO alleged that Morgan was an "agent" and "fiduciary" of NAWCO. In count 2, NAWCO alleged that Morgan breached her "fiduciary duty of care to NAWCO" by submitting invoices to NAWCO that "caused the NAWCO to overpay WCEI and/or WOW." Count 3 alleged that Morgan breached her "fiduciary duty of loyalty to NAWCO" when

4

she "knowingly and intentionally provided invoices to NAWCO which caused the NAWCO to overpay WCEI and/or WOW."

¶ 13　In counts 4, 11 and 13, NAWCO alleged that Morgan, WCEI and WOW engaged in consumer fraud by depriving NAWCO of funds. NAWCO alleged that defendants' fraud "directly involves consumer protection concerns because of NAWCO's mission and objectives, as well as WCEI's status as a provider of continuing education to health care providers."

¶ 14　In count 5, NAWCO alleged that Morgan committed conversion by "wrongfully assum[ing] dominion over the NAWCO funds, not just by causing invoices to be submitted to NAWCO from WCEI and WOW, but also directly causing NAWCO to pay those invoices by exercising defacto [*sic*] authority and control over NAWCO and its personnel." NAWCO alleged that Morgan ordered NAWCO personnel, specifically Salutric, "to pay Exhibits A-D, thus causing funds to be diverted from NAWCO, over which Morgan had defacto [*sic*] control, to WCEI and WOW, over which she had actual ownership and control." NAWCO alleged that Morgan's "actions have unlawfully taken Plaintiff's funds which was a conversion."

¶ 15　In counts 6, 8 and 9, NAWCO alleged conspiracy against Sardina. In count 6, NAWCO asserted a claim of conspiracy to commit fraud, alleging that Sardina "conspired and acted in concert with Morgan to defraud NAWCO." In count 8, NAWCO set forth a claim for conspiracy to commit consumer fraud, alleging that Sardina "acted in concert with and/or in agreement with Morgan in committing *** [consumer] fraud." Count 9 was a claim for conspiracy to commit conversion. In that count, NAWCO alleged that Sardina "acted in concert with and/or in agreement with Morgan in committing *** conversion."

¶ 16　In count 7, NAWCO alleged breach of fiduciary duty against Sardina, alleging that Sardina was an "agent" and "fiduciary" of NAWCO and that she breached her fiduciary duty of loyalty to

5

NAWCO when she "knowingly and intentionally conspired with Morgan to provide invoices to NAWCO which caused the NAWCO to overpay WCEI and WOW."

¶ 17 In counts 10 and 12, NAWCO alleged fraud against WCEI and WOW. In count 10, NAWCO alleged that "Morgan and Sardina were principals of defendant WCEI, and, "[a]s such, [d]efendant WCEI is bound by and liable for the fraudulent acts alleged above." NAWCO alleged that "[t]he fraudulent acts of Morgan and/or Sardina were conducted with the knowledge of and on behalf of WCEI." In count 12, NAWCO alleged: "At all relevant times, Defendants Morgan and Sardina were principals of Defendant WOW. *** As such, defendant WOW is bound by and liable for the fraudulent acts alleged above related to false invoices for amounts claimed to be owed by NAWCO to WOW." NAWCO also alleged that "[t]he actions of Morgan and Sardina are imputed" to WOW.

¶ 18 In counts 14 through 16, NAWCO alleged breach of contract against WCEI. In count 14, NAWCO alleged: "On or about 2017, an agreement arose between WCEI and NAWCO whereby NAWCO agreed to handle the processing of certain applications." NAWCO further alleged that "[t]he agreement called for NAWCO to be paid $30 per application." NAWCO alleged that it processed 1806 applications in 2017, pursuant to its agreement with WCEI, and demanded payment from WCEI, but WCEI refused to pay. As a result, NAWCO alleged that WCEI breached the agreement and owed NAWCO $54,180. In count 15, NAWCO alleged that "[o]n or about 2002, an express agreement was formed between NAWCO and WCEI whereby NAWCO agreed to pay WCEI for the processing of certain applications" at a cost of "$30 per application." NAWCO alleged that WCEI breached that agreement by submitting exhibits A and B, which contained charges for applications that exceeded the number of applications processed by NAWCO for the time periods indicated. In count 16, NAWCO alleged that "[a]t some time after

6

WCEI's incorporation, an agreement was formed whereby NAWCO agreed to reimburse WCEI for actual charges incurred by WCEI in connection with the cost of room charges and other charges related to educational programs." NAWCO alleged that exhibits C and D "constitute over billing and a breach of WCEI's agreement with NAWCO."

¶ 19    Defendants filed a motion to dismiss NAWCO's first amended complaint. The trial court granted the motion, entering an order dismissing counts 2 to 13 with prejudice and counts 1, 14, 15 and 16 without prejudice but ordering NAWCO to obtain court approval before refiling count 1. The court further ordered that any amended complaint be limited to 50 paragraphs.

¶ 20    Thereafter, NAWCO filed a second amended complaint. Counts 14 and 15 alleged breach of contract against WCEI. Defendants filed a motion to dismiss, which the trial court granted, dismissing the breach of contract counts with prejudice. NAWCO sought leave to file a third amended complaint to add an unjust enrichment claim but later withdrew that request.

¶ 21    ANALYSIS

¶ 22    NAWCO appeals the trial court's dismissal of its first amended complaint. Specifically, NAWCO alleges that the trial court erred in dismissing the counts alleging common law fraud (counts 1, 10 and 12), breach of fiduciary duty (counts 2, 3 and 7), conversion (count 5), conspiracy (counts 6 and 9) and breach of contract (count 14).

¶ 23    A motion to dismiss filed pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2–615 (West 2020)) "attacks the legal sufficiency of a complaint; its purpose is to raise defects apparent on the face of the pleadings." *Hartmann Realtors v. Biffar*, 2014 IL App (5th) 130543, ¶ 14. In reviewing a section 2-615 motion to dismiss, the court must determine "whether the complaint sufficiently states a cause of action." *Jackson v. Michael Reese Hospital & Medical Center,* 294 Ill. App. 3d 1, 9 (1997). The question presented by a section 2-615 motion

7

is whether the allegations of the complaint, taking all well-pleaded facts as true and considering them in a light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Chandler v. Illinois Central R.R. Co.,* 207 Ill.2d 331, 348 (2003). The complaint must be construed liberally and should only be dismissed when it appears that the plaintiff cannot recover under any set of facts. *Tedrick v. Community Resource Center, Inc.,* 235 Ill.2d 155, 161 (2009). However, the plaintiff must allege sufficient facts to bring a claim within a legally recognized cause of action. *Id.* Our standard of review is *de novo. Chandler,* 207 Ill.2d at 349.

¶ 24                                    I.  Fraud

¶ 25        The elements of common-law fraud are: (1) a false statement of material fact; (2) the defendant knew the statement was false; (3) the defendant intended that the statement induce the plaintiff to act; (4) the plaintiff relied upon the truth of the statement; and (5) the plaintiff suffered damages from his reliance on the statement. *Connick v. Suzuki Motor Co., Ltd.,* 174 Ill.2d 482, 496 (1996). A complaint for common-law fraud "must allege, with specificity and particularity, facts from which fraud is the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made." *Id.* at 496-97. "Conclusory allegations are insufficient." *Aasonn, LLC v. Delaney*, 2011 IL App (2d) 101125, ¶ 28.

¶ 26        A fraud claim can be based on false representations that the defendant completed certain tasks. See *id*. ¶ 32. Invoices themselves constitute misrepresentations of fact where they contain charges for work not actually performed or items not actually provided by the defendant to the plaintiff. See *id*. ¶ 31; *Calvetti v. Antcliff*, 346 F.Supp. 2d 92, 101 (D.C. 2004); *Northern Indiana*

8

*Steel Supply Co. v. Cozzi*, 727 F.Supp. 393, 396 (N.D. Ill. 1989); *Braselton Bros., Inc. v. Better Maid Dairy Products, Inc.*, 150 S.E.2d 620, 622 (Ga. 1966).

¶ 27    In *Cozzi*, the court held that the plaintiff stated a cause of action for common-law fraud under Illinois law based on the following alleged facts:

> "Defendants knowingly made a false statement of material fact when invoices were submitted to NISSCO claiming that the defendants had delivered 2,000 gross tons of black clips to Burns Baling. The very purpose of these invoices was to induce NISSCO to rely on the invoices and issue payment for materials which were not received. NISSCO relied on these invoices and issued checks to the defendants in the amount of $154,759.90. Plaintiff's reliance was justified, as these invoices correlated to weight tickets and purchase contracts that created the appearance that a legitimate, actual delivery of materials had occurred. NISSCO sustained damage, as it paid for materials it never received." *Cozzi*, 727 F. Supp. at 396.

"Corporations are intangible creations." *Franklin Life Insurance Co. v. People ex rel. Yancey*, 103 Ill. App. 554, 559 (1902). "They act only through their living representatives." *Id*. "What these representatives do in the transaction of the business of the corporation the corporation, in law, is held to have done." *Id*. Corporations can be held liable for the acts of their agents performed within the scope of their agency. See *McNerney v. Allamuradov,* 2017 IL App (1st) 153515, ¶ 75. A claim for vicarious liability of a corporate principal should not be dismissed where the plaintiff fails to specifically allege that an agent acted in the scope of his agency if a reasonable inference can be drawn from the well-pleaded facts that the agent was so engaged. See *Gregor by Gregor v. Kleiser*, 111 Ill. App. 3d 333, 338 (1982).

¶ 28      When a cause of action is based on vicarious liability, a claim against the principal corporation fails if the claim against the agent fails. See *Billstrom v. Triple Tread Tire Co.*, 220 Ill. App. 550, 553 (1921). "[T]he dismissal of an agent generally compels dismissal of any vicarious liability claim against the principal." *DeLuna v. Treister*, 185 Ill. 2d 565, 581 (1999) (citing Restatement (Second) of Judgments § 51 (1982)).

¶ 29                                A. Fraud claim against Morgan

¶ 30      Here, NAWCO alleged that four invoices submitted by Morgan contained false statements in that the sums detailed on the invoices were "not due and owing to WCEI." NAWCO alleged that the first invoice, which reflected an amount due of $350,000 for applications WCEI allegedly processed from 2007 to 2011, was false because NAWCO had already paid for the processing of those applications. With respect to the second invoice containing application-processing fees for 10,000 applications from 2002 to 2006, NAWCO alleged that the charges contained therein were false because (1) the total applications processed by WCEI during those years totaled only 2749, and (2) NAWCO already paid WCEI for the processing of those applications. NAWCO alleged that the third and fourth invoices, which contained room rental charges from 2012 to 2017, were also false because they did not reflect the amounts actually charged WCEI but contained charges that were greatly inflated. NAWCO sufficiently alleged that the invoices themselves constituted false representations because they contained charges for services that WCEI never performed and had no right to collect from NAWCO. See *Delaney*, 2011 IL App (2d) 101125, ¶ 31; *Calvetti*, 346 F.Supp. 2d at 101; *Cozzi*, 727 F.Supp. at 396; *Braselton Bros., Inc*, 150 S.E.2d at 622.

¶ 31      NAWCO further alleged that (1) Morgan had knowledge of the falsity of the invoices; (2) Morgan created and sent the invoices to NAWCO "with the intent that NAWCO would rely on them" and pay them; (3) NAWCO relied on the invoices and paid them; and (4) NAWCO "incurred

10

damages as a direct and proximate result." These allegations were sufficient to state a cause of action for fraud against Morgan. See *Cozzi*, 727 F. Supp. at 396. Thus, the trial court erred in dismissing this count with respect to the four invoices Morgan sent on behalf of WCEI.

¶ 32    With respect to the allegedly fraudulent charges Morgan submitted on behalf of WOW, NAWCO failed to state a cause of action for fraud. NAWCO alleged that the charges were "not legitimate" because they were submitted without "supporting documentation." However, unlike the invoices from WCEI, NAWCO failed to allege that WOW's charges consisted of false statements of material fact. Absent such an allegation, NAWCO failed to state a claim for fraud for the charges Morgan submitted to NAWCO on behalf of WOW.  See *Delaney*, 2011 IL App (2d) 101125, ¶¶ 31-32.

¶ 33                              B.  Fraud claim against WCEI

¶ 34    In count 10, NAWCO alleged that Morgan is a "principal" of WCEI and, therefore, WCEI is responsible for her fraudulent acts. NAWCO further alleged that Morgan committed the allegedly fraudulent acts set forth in count 1 on behalf of WCEI and with WCEI's knowledge. In other paragraphs of its complaint, NAWCO alleged that Morgan was "in control of how billing was performed" and "responsible for directing the billing" of WCEI. However, NAWCO failed to allege that Morgan committed the allegedly fraudulent acts in the scope of her agency, a requirement for establishing vicarious liability against WCEI. See *McNerney,* 2017 IL App (1st) 153515, ¶ 75.

¶ 35    Nevertheless, NAWCO alleged that Morgan was "in control of" and "responsible for" WCEI's billing. Therefore, a reasonable inference can be drawn from the facts NAWCO pleaded that Morgan was acting in the scope of her agency with WCEI when she sent the allegedly fraudulent invoices. Thus, the trial court erred in dismissing this count. See *Kleiser*, 111 Ill. App.

11

3d at 338 (court should not dismiss vicarious liability claim against principal for plaintiff's failure to allege that agent was acting in the scope of his agency where reasonable inference can be drawn from facts that he was so acting).

¶ 36                                     C. Fraud claim against WOW

¶ 37        In count 12, NAWCO alleged that Morgan is an agent of WOW and committed allegedly fraudulent acts on behalf of WOW. As set forth above, NAWCO's allegations against Morgan with respect to the charges she submitted on behalf of WOW were insufficient, as a matter of law, to state a claim for fraud. Because NAWCO failed to state a claim for fraud against Morgan with respect to WOW's charges, NAWCO's fraud claim against WOW, based on Morgan's actions, likewise fails. See *DeLuna,* 185 Ill. 2d at 581 (dismissal of claim against agent compels dismissal of vicarious liability claim against principal). The trial court properly dismissed this count.

¶ 38                                     II. Breach of fiduciary duty

¶ 39        To state a claim for breach of fiduciary duty, the plaintiff must allege the following: "(1) that a fiduciary duty exists; (2) that the fiduciary duty was breached; and (3) that such breach proximately caused the injury of which the party complains." *Lawler v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 69.

¶ 40        A fiduciary duty may arise as a matter of law from a particular relationship. *Martin v. State Farm Mutual Automobile Insurance Co.*, 348 Ill. App. 3d 846, 850 (2004). The existence and scope of the fiduciary relationship duty an individual owes to a corporation depends on the status of the individual claimed to owe the duty. See *e.g. Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160-61 (1993) (contrasting fiduciary duty owed by an employee with that of an officer). A fiduciary relationship may exist between a corporation and its employee. See *Advantage Marketing Group v. Keane*, 2019 IL App (1st) 181126, ¶¶ 27-33. Corporate officers and directors owe a

12

fiduciary duty of loyalty to their corporations. See *Elleby v. Forest Alarm Service, Inc.*, 2020 IL App (1st) 191597, ¶ 43; *Illinois Non-Profit Risk Management Ass'n v. Human Service Center of Southern Metro-East*, 378 Ill. App. 3d 713, 727 (2008). However, "after a director or officer resigns from a corporation, he or she owes no fiduciary duty to that corporation." *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 68 (1990).

¶ 41                          A. Breach of fiduciary duty against Morgan

¶ 42        Here, NAWCO did not allege that Morgan was a director, officer or employee of NAWCO at the time of her allegedly fraudulent conduct. In its complaint, NAWCO alleged that Morgan was a director of WCEI at one time but that she was not a director in 2016 or anytime thereafter. Morgan sent the allegedly fraudulent invoices in 2016 and 2017. Based on the allegations of the complaint, Morgan was not a director or officer when she created and sent the allegedly fraudulent invoices. As such, she owed no fiduciary duty to NAWCO. See *Hagshenas*, 199 Ill. App. 3d at 68. The trial court properly dismissed the breach of fiduciary claims against Morgan.

¶ 43                          B. Breach of fiduciary duty against Sardina

¶ 44        Likewise, the allegations against Sardina fail to establish that she was an officer, director or employee of NAWCO during the relevant time period. Thus, she did not owe a fiduciary duty to NAWCO, and the trial court properly dismissed the breach of fiduciary duty claims against her.

¶ 45                                    III.  Conversion

¶ 46        To state a claim for conversion, a plaintiff must allege: (1) an unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *General Motors Corp. v. Douglass*, 206 Ill. App. 3d 881, 886 (1990). "The essence of conversion is the wrongful

13

deprivation of one who has a right to the immediate possession of the object unlawfully held." *Id.* (citing *In re Thebus*, 108 Ill.2d 255, 259 (1985)). Conversion does not lie when the plaintiff voluntarily, but mistakenly, transfers money to the defendant. See *id*. at 891; see also *International Floor Crafts, Inc. v. Adams*, 578 F. Supp. 2d 231, 233-34 (D. Mass. 2008) (holding that proper cause of action for defendant's acceptance of check in payment of allegedly fraudulent invoices was fraud, not conversion).

¶ 47        Here, NAWCO alleged that Morgan wrongfully assumed dominion over NAWCO's funds by submitting fraudulent invoices, which NAWCO paid. NAWCO further alleged that it "has an absolute and unconditional right to the converted funds." However, NAWCO failed to allege that it demanded return of the funds from Morgan. Because demand for possession of the property is a requirement of a conversion claim, NAWCO's conversion claim fails. See *Douglass*, 206 Ill. App. 3d at 886. The conversion claim also fails because NAWCO sought the return of money it voluntarily, but mistakenly, paid to WCEI and WOW. See *id.*; *Adams*, 578 F. Supp. 2d at 233-34. The proper cause of action based on the facts NAWCO alleged is fraud, not conversion. See *Adams*, 578 F. Supp. 2d at 233-34. For these reasons, the trial court properly dismissed NAWCO's conversion claim.

¶ 48                          IV. Conspiracy claims against Sardina

¶ 49        "The elements of a civil conspiracy are: (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act." *Fritz v. Johnston,* 209 Ill.2d 302, 317 (2004) (citing *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 62-63 (1994)). To state a cause of claim for civil conspiracy, the plaintiff must allege the existence of an agreement and a tortious act committed in furtherance of

14

that agreement. *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 133 (1999). "The agreement is 'a necessary and important element' of this cause of action." *Id.* (quoting *Adcock,* 164 Ill.2d at 62). "The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss." *Buckner v. Atlantic Plant Maintenance, Inc.,* 182 Ill.2d 12, 23 (1998).

¶ 50    "Furthermore, a conspiracy is not an independent tort." *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000). If a plaintiff fails to state an independent cause of action underlying its conspiracy allegations, the plaintiff's claim for conspiracy also fails and should be dismissed. See *id.*; *Pluciennik v. Vandenberg*, 2018 IL App (3d) 160726, ¶ 22.

¶ 51                                    A. Conspiracy to commit fraud

¶ 52    In count 6, NAWCO asserted a claim for conspiracy to commit fraud against Sardina, alleging that she "conspired and acted in concert with Morgan to defraud NAWCO." By using the word "conspired," NAWCO merely characterized Sardina's actions as a conspiracy without providing factual support for her claim. Such a characterization, without facts supporting it, is insufficient to state a claim for conspiracy. See *Buckner,* 182 Ill.2d at 23. Additionally, NAWCO failed to allege the existence of an agreement, a " 'necessary and important element' " of a conspiracy claim. See *McClure,* 188 Ill.2d at 133 (quoting *Adcock,* 164 Ill.2d at 62). For these reasons, NAWCO failed to sufficiently plead a cause of action for conspiracy to commit fraud against Sardina, and the trial court properly dismissed that count.

¶ 53                                    B. Conspiracy to commit conversion

¶ 54    In count 9, NAWCO alleged that Sardina "acted in concert with and/or in agreement with Morgan in committing *** conversion" and "undertook one or more overt tortious actions in

furtherance of the conspiracy to commit conversion." These conclusory allegations are insufficient to state a cause of action for conspiracy because NAWCO failed to allege facts supporting (1) the existence of an "agreement" between Sardina and Morgan and (2) that Sardina knowingly and voluntarily participated in a common scheme to commit conversion. See *McClure,* 188 Ill.2d at 133. Moreover, as set forth above, plaintiff failed to state a cause of action for conversion, the tort underlying its conspiracy allegations; thus, plaintiff's conspiracy to commit conversion claim also fails. See *Pluciennik*, 2018 IL App (3d) 160726, ¶ 22; *Norweb PLC*, 316 Ill. App. 3d at 432. For these reasons, the trial court properly dismissed NAWCO's conspiracy to commit conversion claim.

¶ 55                                                  V. Breach of contract

¶ 56           "To properly plead a cause of action for breach of contract, a plaintiff must allege the essential elements, which are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) resultant injury to the plaintiff." *Gonzalzles v. American Express Credit Corp.,* 315 Ill.App.3d 199, 206 (2000). Furthermore, "allegations demonstrating the existence of a contract must contain facts indicating an offer, acceptance and consideration." *Wait v. First Midwest Bank/Danville*, 142 Ill. App. 3d 703, 706 (1986). A broad and general allegation that a contract exists without supporting facts is a legal conclusion, which cannot serve as an essential element of a breach of contract claim. See *id.*; *McErlean v. Union National Bank of Chicago*, 90 Ill. App. 3d 1141, 1147 (1980). To allege that a contract "was entered" is to state a mere legal conclusion that should be disregarded by the trial court in ruling on a motion to dismiss. See *Wait*, 142 Ill. App. 3d at 706-07.

¶ 57           Here, NAWCO alleged that "[o]n or about 2017, an agreement arose between WCEI and NAWCO." However, NAWCO failed to allege any facts indicating an offer, acceptance and

16

consideration with respect to the alleged "agreement" that "arose" between WCEI and NAWCO. Plaintiff's allegation that "an agreement arose" is a mere conclusion and insufficient to establish the existence of a contract necessary for plaintiff's breach of contract claim. See *Wait*, 142 Ill. App. 3d at 706; *McErlean*, 90 Ill. App. 3d at 1147. The trial court properly dismissed NAWCO's breach of contract action. See *Wait*, 142 Ill. App. 3d at 706-07.

¶ 58                                                  CONCLUSION

¶ 59            The judgment of the circuit court of Will County is affirmed in part and reversed and remanded in part.

¶ 60            Affirmed in part; reversed and remanded in part.

17